## STATE v. RAILROAD.

(Filed March 6, 1906).

*Municipal Corporations — Railroads — Licenses — Police Power—Regulation of Streets—Ordinances—Violation.*

1. A license granted by a city to a railroad company to lay a track upon and to that extent use the streets, in the absence of an express power in the charter to do so, such license cannot be construed into a grant of a permanent easement.

2. Where a contract between a city and railroad company amounted merely to a license granted to the company to lay its tracks on the street and run its cars thereon, the power of the city to make such laws and regulations controlling the use of the streets by the defendant as the safety and comfort of the citizens demanded, was not in any degree restricted thereby.

3. Any and all franchises and privileges conferred upon persons or corporations respecting the use of the streets, wharves, parks or other public property of the city are conferred and accepted subject to the police power vested in the city.

4. The shifting of cars in a street in making up a train constitutes a violation of an ordinance providing that no engine or train shall be stopped on any street except at the foot of the same for the reception and delivery of freight.

INDICTMENT against the Atlantic & North Carolina Railroad Co., heard by *Judge E. B. Jones* and a jury, at the October Term, 1905, of the Superior Court of CRAVEN.

The defendant corporation is charged with violating an ordinance of the city of New Bern, which provides "that it shall be unlawful for any corporation or person or employee to operate any engine, train or railroad cars upon any railroad track upon the streets of the city of New Bern, in any manner in violation of the terms of the contract subsisting between the said city of New Bern and the railroad company or corporation, between whom and the city a contract was

made, now remaining in force, under which the said railroad company was permitted to lay its tracks upon the said streets of the city of New Bern * * * and for each violation of said terms the person or corporation * * * shall be fined for each offense the sum of $50. By section 98 of the ordinance of said city it is provided "that no engine, locomotive or car or cars shall be stopped on any railroad or on any street in the city of New Bern south of Johnson street and south of Queen street from its intersection with Johnson street westwardly to the limits of the city, except at a depot for the purpose of receiving and delivering freight at such depot." For a violation of the ordinance a fine of $50 is imposed. The case was carried by appeal to the Superior Court, and from an adverse verdict and judgment the defendant appealed to this court.

*Robert D. Gilmer, Attorney-General,* for the State.
*Simmons & Ward* for the defendant.

CONNOR, J. It was not denied that defendant at the time charged in the complaint was engaged in shifting cars on its track and sidings on the streets of the city within the prohibited limits. Defendant contended that in doing so it was exercising a right secured to it by a contract entered into between the city and itself on the 12th day of April, 1856. The contract was introduced in evidence. It appears from an examination of its provisions that the city granted to the defendant a right of way in and through Hancock street from the north side of Queen street to the channel of Trent River. It was provided, "That there shall be only one track of road except such branch or branches as may be required for the discharge of freight at the river Trent and for connecting with the several lines near the depot at the head of Hancock street." Following several other provisions, not material to the decision of this appeal, is the fol-

141—47

lowing: "Nor shall said engine or train be stopped on said streets, except at the foot of the same for the reception or delivery of freight." The State introduced testimony tending to show a violation of the ordinance. Mr. Whitford, who was in charge of the engine at the time of the alleged violation, was introduced by defendant and, after describing the manner in which he was handling the train, said: "We were shifting cars, not unloading them. We were locating loaded cars in the train that was going to Morehead City. We were not receiving or delivering freight." Mr. Davis, who was the agent at the freight warehouse at foot of Hancock street, testifying for defendant, said that on the day of the conduct of which complaint is made "they were making up freight on train for Morehead City." His Honor, at the request of the defendant, instructed the jury that "The contract and ordinance authorize such sidings and such stopping of engines and cars as is reasonably necessary in receiving and delivering freight at the warehouse at the foot of Hancock street, either in whole carloads or less than carloads, and if the defendant had used the street only for this purpose, the jury shall find the defendant not guilty"—to which he added the words, "Provided, if you find that the defendant could shift somewhere else, you should still find the defendant guilty." To this the defendant excepted. The case was tried below and argued in this court upon the assumption that the contract of April, 1856, restricted the power of the city of New Bern to make and enforce ordinances controlling, by reasonable limitation, the manner in which the defendant should operate its trains on Hancock street. It is exceedingly doubtful whether such is a correct view of the law in that respect. Without bringing into question the power of the commissioners of a town to grant a license to a railroad company to lay a track upon and to that extent use the streets, we think it clear that in the absence of an express power in the charter to do so, such license cannot be con-

strued into a grant of a permanent easement. As the contract appears to us, a license to lay the track and run the cars thereon is given. The corporation in consideration thereof makes certain stipulations with the city, one of which is that "no engine or train shall be stopped on said street, except at the foot of the same for the reception and delivery of freight." We do not think that either the language by which the license is given or the stipulation in regard to its use affects the right or power of the city to regulate the movement of trains on the street. This right is inherent in the city, as a portion of the police power conferred by the State and cannot be sold or bartered away. Any and all franchises or privileges conferred upon persons or corporations respecting the use of the streets, wharves, parks or other public property of the city are conferred and accepted subject to the police power vested in the city. For instance, the defendant company stipulates that it will not run its trains through said streets at a higher rate of speed than three miles an hour. Can it be doubted that even if the language be construed into the grant of the privileges of running its trains at that rate of speed, the governing body of the city could, if in their judgment such speed was dangerous, restrict it to some other reasonable rate. The law is thus laid down by Judge Elliott: "The grant of a right to use a street does not by any means imply that the municipality surrenders the right to make needful police regulations, nor does it authorize the company to unnecessarily obstruct the street or to negligently operate its road. The right to make necessary rules for the safety of the public is a legislative power, and is not surrendered, if indeed it can be capable of surrender." Roads & Streets, sec. 479. *Mr. Justice Brown,* in *Wabash R. R. Co. v. Defiance,* 167 U. S., 88, says: "Indeed, the general principle that the legislative power of a city may control and improve its streets, and that such power, when duly exercised by ordinances, will override any license previously given by which the control of a cer-

tain street has been surrendered to any individual or corporation, is so well established, both by the cases in this court and in the courts of the several States, that a reference to the leading authorities upon the subject is sufficient." In *Balto. v. Balto. Trust Co.,* 166 U. S., 673, it appeared that the city council in 1891 passed an ordinance authorizing the North Av. Ry. Co. to lay a double track on Lexington street. Thereafter an ordinance was passed revoking the first and restricting the road to one track. *Peckham, J.,* says that it is unnecessary to discuss the question whether the council had the power to grant the license, and, if so, whether the ordinance constituted a contract; concluding, he says: "It is sufficient for the decision of this case to hold that the direction to lay but one track through Lexington street, between the points mentioned, did not substantially change the terms of the contract, and was no more than the exercise by the city of its acknowledged power to make a reasonable regulation concerning the use of that street by the railroad company, and that the original contract (assuming that one existed) was entered into subject to the right of the city to adopt such a regulation." In Smith on Mun. Corp., sec. 1288, it is said: "The powers of a municipal corporation in respect to opening, improving and controlling its streets are held in trust for the benefit of the public and cannot be surrendered by contract to private persons, or to a corporation, by resolution of the common council, or in any other manner." The general rule to be extracted from the authorities is that the legislative power vested in municipal bodies is something which cannot be bartered away in such manner as to disable them from the performance of their public functions. *Railroad v. Defiance, supra.* In the light of these and many other authorities of uniform import, we hold that in no aspect of the testimony could the judge below have held that the defendant was not guilty. Treating the license given by the instrument of April, 1856, as a contract, only

for the purpose of argument, we do not think that it in any degree restricted the power of the city to make such rules and regulations controlling the use of the streets by the defendant as the safety and comfort of the citizens of New Bern demanded.    *Glenn v. Commisisoners,* .139 N. C., 412.    The defendant's witnesses showed clearly that the train was not unloading or receiving freight, but shifting cars in making up a train for Morehead City.    His Honor's charge was more favorable than the testimony warranted.    The judgment must be

No Error.