L. L. STATON v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 22 April, 1908).

1. **Railroads—Streets, Use of, for Unlawful Purposes—Abutting Owner—Rights and Remedies.**

In addition to the general rights of citizens to the use of a street, an abutting owner has rights peculiar to his ownership, and for an unlawful invasion thereof by another's using the streets for unlawful purposes, such as are not embraced within those of a highway, he may maintain an action in his own right, irrespective of the ownership of the fee in the street.

2. **Same—Municipal Powers.**

As against the rights of abutting owners the municipal authorities have no power to grant to a railroad company an easement to lay its track upon and operate its trains over the streets of a town, even though the title to the streets be in the town.

3. **Same—Estoppel in Pais.**

An injunction will not lie against the operation by a railroad company of its train upon a street of a city at the suit of an abutting owner who bought the land long after the conditions existed or who waited an unreasonable time before invoking injunctive relief against injury to his property caused by the construction and operation of the spur railroad.

4. **Same—Intervening Rights.**

It would be inequitable to enjoin a railroad from properly using its tracks on the city street, with the consent of the city authorities, at the suit of an abutting owner who has waited until the railroad company has expended much money and labor thereon before objecting or seeking this remedy, and when the rights of the public have intervened.

5. **Railroads—Municipal Powers—Abutting Owner—Damages—Independent Action—Limitation of Actions.**

When an abutting owner has established his right to sue as such for the damages sustained by him peculiar to his ownership, he is barred by the statute of limitations, although the town is not barred for obstructing the street.

6. **Railroads—Revisal, sec. 394—Damages, Permanent—Limitation of Actions—First Substantial Injury.**

Under Revisal, sec. 394, subsec. 2, providing that no suit, etc., shall be brought or maintained by any person for damages caused by the construction of a railroad, etc., unless commenced within five years after the cause of action accrues, etc., the time at which the action accrues is not necessarily counted from the con-

struction of the railroad, but from the first substantial injury which was thereby caused by rights of property incident to the construction of the road.

**7. Same—Damages Not Permanent—Measure of Damages.**

    While an action for damages sustained by the construction and operation of a railroad may be barred under Revisal, sec. 394, subsec. 2, if suit be not brought therefor within five years against a railroad for the use of the street for railroad purposes, this rule does not apply to cases where the damages are not of a permanent kind, but which arise from an unlawful use of the street by a spur track for depot purposes or the loading or unloading of cars and the placing of engines thereon so as to become a nuisance to the owner. The damages recoverable are confined to those sustained within three years prior to the institution of the action.

ACTION heard by *Neal, J.,* at October Term, 1907, of EDGECOMBE.

This action is brought and prosecuted for the purpose (1) of enjoining the defendant from using and operating engines and cars over its tracks and spur tracks on certain streets in the town of Tarboro; (2) for damages alleged to have been sustained by the laying of the tracks and spur tracks and operating locomotive engines and cars over same; (3) for damages alleged to have been sustained by reason of the negligent and unlawful use of the tracks, constituting a private nuisance, to plaintiff's injury.

A jury trial in respect to the first cause of action having been waived, the court found the following facts: On 23 September, 1760, Joseph Howell conveyed to James Moir and five other persons a tract of land lying and being in Edgecombe County, on the south side of Tar River and described by metes and bounds, containing 150 acres. The consideration named in the deed is five pounds proclamation money of the Province of North Carolina. On 24 September, 1760, the said James Moir and the other grantees named in said deed executed unto the said Joseph Howell a bond under seal in the penal sum of "two thousand pounds proclamation money." The condition of the bond recited that the said

land was to be laid out for "the building and erecting of a town therein"; that they had received authority to lay out in lots the said land, "excepting one lot where the said Howell House now stands and the graveyard and 50 acres for commons for the use of said town, and to dispose of the same lots, not exceeding one-half acre to a lot,   *   *   *   and to take subscription for the same at two pounds proclamation money for each lot." Streets were to be laid off not exceeding 80 feet in width, etc. The said land was laid off into lots and streets, and a portion thereof, at least fifty acres, was reserved for the use of the town as a commons for the use of the public, and a map thereof was made and recorded in the office of the Register of Deeds, etc.

On 30 November, 1760, the said land so laid off "was constituted, erected and established a town, to be called Tarboro, by act of the Governor, Council and Assembly." The map or plat was declared by act of Assembly "to be held and deemed the plan and bounds of said town." The present town of Tarboro has by successive acts of the General Assembly succeeded to the rights, duties and liabilities of the said corporation, trustees, etc. The common so reserved was covered with large oak and other trees, used and dedicated to the public for park purposes. By act of the General Assembly, passed 27 December, 1852, the commissioners of said town were authorized to lay off into lots and streets, in conformity with the plan of said town as then established, the whole or any portion of the common, as then existing, lying on the western side thereof, between the inhabited portion thereof and Hendricks Creek, the western portion of said town, and to sell such lots at public sale. Pursuant to said act the commissioners laid off into lots and streets that portion of the common described in said statute. Albemarle Avenue runs north and south; Wilson Street runs east and west, crossing the avenue; Hendricks Street runs west of and parallel with the said avenue; all of which fully appears by reference to

the plat filed in the record. The streets are 70 feet wide and were duly laid off and dedicated to the use of the public. The lot formed by the intersection of Albemarle Avenue and Wilson Street, known as Lot 122, was sold by the commissioners pursuant to the provisions of said act. By successive conveyances the title vested in plaintiff, 1 February, 1872. It is described in the deed to him as "bounded on the north by Wilson Street, on the east by Williamston and Tarboro Railroad, south by St. John Street, west by the new street, being Lot 122 in the plat of the town." The boundary called "Williamston and Tarboro Railroad" is now Albemarle Avenue and the "new street" is now Hendricks Street. "The location of plaintiff's lot was desirable as a residence, the surroundings pleasant, easy of access, and the air in and about said lot pure, wholesome and uncontaminated; the said lot commanded an unobstructed view and use of said street and the common lying directly north and northeast of it on the opposite side of Wilson Street." There are large shade trees and a magnolia on the sidewalk.

The Williamston and Tarboro Railroad Company was incorporated by the General Assembly, by chapter 139, Laws 1860. By successive acts of the General Assembly the defendant corporation has succeeded to and acquired all of the rights, privileges, etc., of said company. (See *Staton v. Railroad,* 144 N. C., 135). The road of the defendant was constructed in 1870, prior to the time plaintiff purchased. The defendant entered upon the said street and built its track as indicated in said ordinance, and is using it as a railroad under and by virtue of all of its and predecessors' chartered rights and privileges and by virtue of the town ordinance passed as follows:

"At a call meeting this day. Present, all the commissioners. Ordered that the ordinance of the town on the 3d of December, 1869, be amended 'so as to allow the Williamston and Tarboro Railroad Company to construct their road

track from Tar River along and through Hendricks Street to the Little Creek north of the town commons.' "

Little Creek is the northern terminus of the original Howell deed to the town of Tarboro, and the nearest point is about 85 yards north and in front of plaintiff's premises. The land on the north side of Little Creek was private property, and the railroad was extended across Little Creek to make connection with the Rocky Mount branch of the Wilmington and Weldon Railroad.

In the year 1889, without the consent of the plaintiff, the defendant constructed and has since so maintained and operated a steam railroad spur track leading from Albemarle Avenue, north of Wilson Street, curving diagonally across that portion of the common opposite plaintiff's premises and lying on the opposite side of Wilson Street, continuing diagonally across Wilson Street in front of plaintiff's premises and down said street to a point west of said premises on Wilson Street; and thereafter, in 1902, and without the consent of this plaintiff, it constructed and has since so maintained and operated a steam railroad spur track branching from said curved track at a point on Wilson Street in front of plaintiff's premises, crossing said street diagonally, crossing plaintiff's sidewalk and continuing diagonally across and along Hendricks Street on the westerly side of plaintiff's premises. The first spur track was to a cotton factory one-quarter of a mile away, and the other to the electric power house owned by the town. These spur tracks were built and constructed by virtue of and under the same rights as the main line, save in this, that the ordinance for the spur tracks was passed immediately prior to the construction thereof. Since said road was constructed and within recent years there has been a material increase in the traffic on said road.

Under the charter of the town of Tarboro as it existed on 25 May, 1869, there was no provision authorizing and empowering the town commissioners to make any disposition of

public streets other than that provided for in the general or public laws and in chapter 9 of an act of the General Assembly of North Carolina passed 30 November, 1760.

The town of Tarboro, under its charter and amendments thereto, had at the time the spur tracks were built no authority to use its streets for railroad purposes, unless such authority was conferred by the general public statute (Revisal, ch. 73).

His Honor, upon the foregoing facts, was of the opinion that plaintiff was barred of any relief except for nuisances committed within three years prior to the commencement of the action. Plaintiff excepted.

The plaintiff introduced the following evidence on the issue as to nuisances: The track on Albemarle Avenue is within 25 feet of sidewalk. The spur track is 90 feet from residence, 105 feet from front door. The house fronts east and north; second spur track on west side of house. Railroad runs diagonally across Hendricks Street into the waterworks and electric light plant of the town, on the north, east and west of plaintiff's residence. No depot there. "Prior to 26 September, 1906 (date of summons), they were allowing cars of all sorts to remain on that spur track and unloading theatrical troupes, circuses and fertilizers. They allowed these people to stay there quite a while; allowed vacant cars to remain there, which were frequently slept in by negroes. They allowed engines to remain there at night, and the escaping steam made a great noise. Plaintiff would complain and the engineer would not move the engine. He said he came down there for his meals; it was near his house and it was for his convenience. Then plaintiff complained to the agent and used every means he could to get it away. * * * At night steam was up and escaping, and continuing to remain there all night long and at all hours of the night. Next morning the fire in the engine would be started from 3 to 5 o'clock. Plaintiff's family were continuously kept awake, but they became accustomed to the noises, etc.

147—28

\*   \*   \*   Wood, coal and almost every conceivable thing were kept there. Some fertilizers were unloaded and left on the side of the cars. Sometimes wood was sawed and left there. Cars were left and remained there, and various kinds of tramps slept in them, sometimes for days." Agent said he would do the best he could. Negro minstrel troupes have been unloaded there; also dog and pony shows. Carnivals would stay there for a week, making noises at night, sometimes being drunk and fighting. Carnival paraphernalia would be thrown out, such as old bedding, on the sidewalk. "They leave a little of everything there—iron piping, telephone poles, bricks, rocks and sometimes hay, corn and oats." They frequently had cars right on the corner across the sidewalk. Cars sometimes ran off; curve very sharp.· There is talking and cursing by the hands trying to get the engine and cars on the track. Cars sometimes stall there. There are two freight depots in Tarboro—one north and the other south of residences. Sparks and smoke from engine stopping in front of house on spur track injured shade trees. Plaintiff estimates damage to his property at $5,000, caused by the "manner in which the road has been managed." When circuses were unloaded in front of the house whiskey bottles would be on the sidewalk and dirty bags piled on sidewalk "right in front of door." Plaintiff's family have lost sleep and become nervous from noises, etc.

At the conclusion of plaintiff's testimony defendant moved for judgment of nonsuit. Motion allowed. Plaintiff excepted and appealed.

*G. M. T. Fountain* for plaintiff.
*John L. Bridgers* for defendant.

CONNOR, J., after stating the facts: It will be convenient to dispose of the several phases of this appeal in the order in which they are presented by the well-considered brief of the counsel for plaintiff. It may be conceded that the legal title

to the soil over which the streets of the town of Tarboro are laid out is in the municipality. The deed from Howell to Moir and others vested it in them, and by successive acts of the Legislature it has passed to and remains in the corporation. The corporation holds the title in trust for the citizens and public to use and enjoy as public highways or streets, subject to the control of the town authorities, as prescribed by the charter and public laws contained in Revisal, ch. 73. The title is impressed with a further trust, subject, however, to the rights of the public, for the use and benefit of the owners of lots abutting on said streets. *Moose v. Carson,* 104 N. C., 431, and other cases. The rights of the original purchaser of the lots attaching by virtue of the trusts declared in the bond executed by Moir and others passed with the title to the lots as appurtenant thereto, and in respect to plaintiff's lot vested in him. Cases may be found in other courts in which the right of an abutting owner to sue for damages sustained by reason of the use of streets is made to depend upon the ownership of the soil over which the street is laid out and established. Whatever distinctions in this respect may have been made by the courts in regard to the rights of abutting owners to redress for special injuries sustained have been generally abandoned. *White v. Railroad,* 113 N. C., 610, in which the cases and views of eminent authors are stated with clearness and force by *Shepherd, C. J. Tate v. Greensboro,* 114 N. C., 392; *Brown v. Electric Co.,* 138 N. C., 533; 27 Am. and Eng. Enc., 181. Of course, we must not be understood as referring to actions for damages or compensation by reason of additional burdens imposed upon property condemned or dedicated by the owner to a public use, as in *Phillips v. Tel. Co.,* 130 N. C., 513, and *Hodges v. Tel. Co.,* 133 N. C., 225. In such cases the owner of the soil maintains an action for compensation for additional burdens imposed for public purposes. In addition to the rights of the plaintiff to the use of the streets as a member of the municipality or a

citizen of the town, he has as an abutting owner of the lot rights peculiar to such ownership. *Burwell, J.,* in *Tate v. Greensboro, supra,* says: "It is not to be denied that the abutting proprietor has rights as an individual in the street in his front as contradistinguished from his rights therein as a member of the corporation or one of the public." For an invasion of his rights as a member of the corporation—that is, to the use of the streets—he must seek redress through the corporate authorities or, upon their refusal to act, by an action in behalf of himself and all other members or citizens. *Merrimon v. Construction Co.,* 142 N. C., 539. If the street is obstructed he may sue for any special damage sustained by himself different in character from other citizens, as in *Downs v. High Point,* 115 N. C., 182; *Manufacturing Co. v. Railroad,* 117 N. C., 579. Plaintiff in this appeal sues for an alleged injury by which he claims to have sustained special damages, different in character from such as are sustained by other citizens. That he may maintain the action, unless barred by the statute of limitations, is clear. 27 Am. and Eng. Enc., 183, in which it is said: "If he has suffered special injury from the use of the street by the railroad his remedy is by an action for damages." Lewis Em. Dom. (2d Ed.), 240. Mr. Abbott, in the last edition of his work on municipal corporations (Vol. III, sec. 843), referring to the authorities cited in the first edition, says: "Since then it has become very firmly established that the abutter, though he has not the fee in the street, has certain private rights of access, light and air, which are as much property as the lot itself; and, also, that any interference with such rights by a use which is not within the legitimate purpose of a highway is a taking within the Constitution." *White v. Railroad, supra.* Without multiplying authorities, we may with safety say that with us and the majority of other courts the principle is established that, without regard to the ownership of the fee in the soil, an abutting owner may maintain an action for any unlawful inter-

ference with or invasion of his rights incident to his owner-
ship. We think it equally well settled that the municipal
authorities have no right or power, certainly as against abut-
ting owners, to grant to a railroad company an easement to
lay its track upon and operate its trains over the streets of the
town. It is immaterial whether the title of the street is in
the municipality or the abutting owner. If in the former it
is a breach of the trust reposed in the authorities, and if in
the latter it is an additional burden. In either case damages
or compensation will be awarded appropriate to the injury
sustained. The law as held by us and sustained by the
weight of authority is thus stated by *Shepherd, C. J.,* in
*White v. Railroad, supra:* "The principle, then, being estab-
lished that the use of a street for steam railroads is not a
legitimate use of the street for public purposes, it must, of
course, follow that the city has no right in the exercise of its
usual and ordinary powers relating to its highways to author-
ize the entry and occupation of the same by the defendant,
and that the bare license of the city can afford no justification
for the infringement of the rights of the plaintiff." Mr.
Lewis (Em. Dom., sec. 111) says: "To us it seems so clear
that a railroad is foreign to the legitimate use of a highway
that we have never been able to understand how a court could
reach a contrary conclusion." After an exhaustive discus-
sion of the decisions of various courts, he concludes: "It can
now be safely said that the weight of authority is in support
of the text." We do not deem it necessary or pertinent to the
decision of this appeal to consider or discuss the effect of the
action of the municipal authorities in granting an easement
to the defendant, or to those to whose rights it has succeeded,
in the streets upon the right of the plaintiff as a citizen of the
town. He is not suing for an invasion of such rights or for
the occupation of any portion of the street or its use in the
operation of its trains. He sues for special damages to his
property abutting upon the street. Conceding that the origi-

nal entry upon the streets, the construction of the road and the operation of the trains was with the consent of the municipal authorities, and that to the extent of the authority to do so they granted the easement over the street, we do not perceive how this can affect the plaintiff's rights in this action. The authorities are uniform to the effect that neither the municipal authorities nor the Legislature can confer an easement or right to use the street as against the property of the citizen without providing for compensation. The question was considered by us in *Brown v. Electric Co., supra,* and the authorities examined. We are content to abide by what was said in that case.

The defendant says that, conceding a cause of action accrued to plaintiff or to those from whom he purchased the property for the interference with their rights as abutting owners, he is barred by the lapse of time and the statute of limitations. It is clear that the Williamston and Tarboro Railroad Company or its successors could under the grant of the right of eminent domain have condemned a right of way over Albemarle Avenue, and by paying compensation or permanent damages to the abutting owners have acquired the right to construct and operate its road pursuant to the rights, privileges and franchises conferred in the charter. The owners of the property would not have been entitled to an injunction to restrain such condemnation or use. Whatever may have been the rights of the owner of the property in 1870, when the road was constructed along Albemarle Avenue, it is clear that the plaintiff, having purchased the property after the road was constructed and while it was being operated, will not be allowed to enjoin its use in a proper manner. The spur track was constructed in 1889 and has been in use seventeen years. The map and the statutes put in evidence show that the defendant's road between Tarboro and Plymouth constitutes part of a system of railroads; that to enjoin the use of the track over Albemarle Avenue would destroy property of

immense value and seriously interfere with and, until a new connection be made involving the construction of a new iron bridge over Tar River, render it impossible for the defendant to perform its duties to the public. That the public would in many ways be seriously injured is manifest. Courts never enjoin the construction or use of public utilities and improvements at the suit of private individuals unless the damage is both serious in amount and irreparable in character. *Navigation Co. v. Emery,* 108 N. C., 133. It is a sufficient answer to the demand for an injunction that plaintiff has by his inaction for so long a period permitted an expenditure of large sums, not only in the construction of the road, but in connections, bridges and otherwise, both by the defendant and others, rendering it inequitable to destroy the value of the property and impose the immense inconvenience which would result from restraining the use thereof. In regard to the spur track, while the reasons are not so conclusive, we can see from the map and the evidence that to prevent its use in a proper way—that is, as a passage to and from the electric light plant and waterworks of the town—would seriously affect public interests. If plaintiff regarded the injury to his property by the construction of the spur track serious and irreparable he should have objected to it before or at the time it was constructed. He may not wait seventeen years and then invoke the equitable power of the court. The plaintiff says that while he may not have injunctive relief he is entitled to his action for damages sustained by reason of the invasion of his rights of access, air, light, shade trees, quiet and rest of his family and himself. That the construction of the road along Albemarle Avenue and of the spur tracks and the running of the trains have seriously injured him in these respects. To this demand defendant pleads the statute of limitations. The plaintiff insists that, as by the provisions of section 389 of Revisal no right can be acquired to an exclusive use of the streets by lapse of time against the municipality,

this defense is not open to defendant. It is undoubtedly true, as said by *Mr. Justice Avery* in *Moose v. Carson, supra,* "No one can acquire as a general rule by adverse occupation as against the public the right to a street or square dedicated to the public use." In that case the plaintiffs claimed title to the soil dedicated as a street. It was held that they could not recover. The defendants were claiming as abutting owners by virtue of the dedication. The learned Justice says: "The plaintiffs have shown no such title as would warrant the Court in granting a writ of possession. If the fee were vested in the town, which is not conceded, there would still be wanting in the plaintiffs, its grantee, the right to prevent possession and occupancy of a street dedicated to the public." *Conrad v. Land Co.,* 126 N. C., 776; *Clark v. Hughes,* 134 N. C., 457. In *State v. Railroad,* 141 N. C., 736, the city of New Bern was enforcing an ordinance by indictment for obstructing the street. The Court held that by granting the license to defendant to construct its track on the street the city did not surrender its power or right to control its use. What effect the action of the municipal authority in passing the several ordinances may have upon its right to maintain actions, or plaintiff's right to sue for injuries sustained by him as a citizen of the town, are not presented, and we express no opinion in regard to them. The plaintiff here sues, not by virtue of any rights claimed under or in privity with the town, but he asserts that, without regard to the action of the town authorities, the defendant by constructing and operating its road has committed a trespass upon his property rights. We hold that the ordinances relied upon by defendant to justify its conduct do not affect the plaintiff's rights, and that, notwithstanding such ordinances, whether treated as licenses or grants of easements, he may maintain his action. Having thus successfully asserted his right against both the municipal authorities and the defendant justifying under them, he may not claim immunity from the operation of a statute of limita-

tions by reason of a statute conferring such immunity upon
the town.   It is not necessary for us to discuss the interesting
question raised by plaintiff's counsel, whether by the construc-
tion and operation of the road over Albemarle Avenue for
more than twenty years the defendant has acquired as against
plaintiff an easement or right to do so.   The origin and ex-
tent of the use as the basis for a presumption of a grant pre-
sents interesting questions not free from difficulty.   They are
indicated in the opinion of *Mr. Justice Avery* in *Emery v.
Railroad,* 102 N. C., 209 (232).   It was in consequence of
this difficulty and to prevent railroad companies owing duties
to the public from being subjected to successive actions for
trespasses of the character charged in this action that the
Court found it necessary to treat the cause of action as accru-
ing on the date of the first substantial injury and to require
that permanent damages be assessed.   Repeated actions for
diverting water over lands not condemned for rights of way
by the construction and repairs of the road were frequently
brought, and it was found impracticable for the companies to
protect themselves and keep their roads in safe and proper
condition to meet the demands imposed upon them for the
public.   The question was thoroughly discussed and the
authorities cited and reviewed by *Mr. Justice Avery* in *Rid-
ley v. Railroad,* 118 N. C., 996.   The attention of the Legis-
lature having been directed to the subject, an act was passed
at the session of 1895 and with the amendment thereto con-
stitutes section 394, Revisal.   Subsection 2 provides: "No
suit, action or proceeding shall be brought or maintained
against any railroad company by any person for damages
caused by the construction of said road or the repairs thereto,
unless such suit, action or proceeding shall be commenced
within five years after the cause of action accrues," etc.   In
*Ridley's case, supra,* it is held that the cause of action accrues,
not necessarily at the time the road is constructed, but "when
the first injury was sustained."   In *Beach v. Railroad,* 120

N. C., 498, the question was carefully considered, and, although the Court was divided upon certain aspects of the case, there was no difference of opinion in regard to the following language used by the present Chief Justice in a dissenting opinion: "Since the act of 1895 (chapter 224) all damages accruing from the construction of a railroad must be sued for within five years and the entire amount recovered in one action." In *Lassiter v. Railroad,* 126 N. C., 507, *Douglas, J.,* says: "Railroads are *quasi* public corporations charged with important public duties, which in their very nature necessarily invoke the power of eminent domain, and therefore the courts with practical unanimity have created a species of legal condemnation by the allowance of so-called 'permanent damages.' * * * The provision in the act of 1895 incidentally providing for a statutory easement, rather by implication than direct terms, seems to us to be in effect little more than a legislative affirmation of the rule already enunciated in other jurisdictions and adopted in *Ridley's case,* which was decided a year after the act was passed." In *Stack v. Railroad,* 139 N. C., 366, it was held that the cause of action was barred after five years from the time that any "substantial injury was done." It is true that in these decisions the damage sued for was ponding water. We can see no reason why the same construction should not be given the statute in all cases where damage is claimed for injuries in the nature of a nuisance or invasion of rights of property incidental to the construction of the road. Certainly the same reasons exist. It would be not only productive of great injustice, but it would seriously impair the ability of railroads to discharge their duties to the public, if, whenever they found it necessary to increase the number of daily trains or the size of their engines or change the kind of fuel used, they should be subjected to actions based upon the suggestion that they had increased the extent of the original user. As we held in *Thomason's case,* 142 N. C., 318, when the right to construct

a railroad is acquired by any means known to the law the
right to operate the road attaches, and this right is not con-
fined to the needs or necessities at the time of the acquisition,
but "to such further demands as may arise from the increase
of its business and the proper discharge of its duty to the
public." *Railroad v. Oliver,* 142 N. C., 257; *Beasley v.
Railroad,* 145 N. C., 272.

If the plaintiff had sued when he sustained the injury he
would have recovered permanent damages in the same man-
ner as if the right to construct the road was condemned.
Lewis Em. Dom., sec. 653.   We concur with his Honor that
the plaintiff is barred of his action for damages by reason of
the construction and operation of the road, both as to the main
track and the spur track constructed in 1889.   We do not
perceive that any damage is shown by the spur track of 1902.
If there be any it will be open to plaintiff to show on another
trial.

We are thus brought to consider the exception to his Honor's
ruling upon the issue directed to the alleged nuisance in the
manner of using and operating the trains and cars on the
track.   Assuming that as against the plaintiff the defendant
has the right to use the tracks in the manner and to the same
extent as if acquired by condemnation or by the payment of
permanent damages, does the evidence, which must be regarded
for this purpose as true and open to inferences therefrom most
favorable to plaintiff, show a nuisance of the right or *quasi*
easement?   Was defendant doing a lawful thing in a lawful
way?   We had occasion to consider the rights and liabilities
of railroad companies in using their tracks near to dwelling
houses in *Thomason v. Railroad,* 142 N. C., 300-318.   The
principle which we deduced from our own and the decisions
of other courts is thus stated: "The powers conferred upon
a railroad company by its charter must be exercised in a law-
ful way—that is, in respect to those who suffer damage, with
due regard to their rights.   When exercised in an unreason-

able or negligent way, so as to injure others in the enjoyment of their property, the injury is actionable." In that case, in the plaintiff's appeal, the tracks and side tracks were altogether on the right of way acquired by defendant. The only question involved upon the complaint and demurrer was whether there was an unlawful user. In the defendant's appeal the jury found upon sufficient allegation that there was a negligent use of a spur track by the company amounting to an actionable nuisance. We gave the question careful consideration and cited in the opinion the best-considered authorities. In the light of those decisions and the later one of *Taylor v. Railroad,* 145 N. C., 400, we do not find any evidence of a nuisance in the use and operation of defendant's trains over Albemarle Avenue. That is a portion of the main track. The greater increase of trains, more cars and heavier engines, making more noise and smoke, are incident to the use of the road and should have been anticipated by plaintiff when he purchased the property and for more than thirty years acquiesced in its use. The case in this respect comes clearly within the principle announced in *Thomason's case* in plaintiff's appeal. In regard to the uses to which the spur track has been put, as described in plaintiff's testimony, we find more difficulty. It is not found why the spur track was constructed, nor are the ordinances under which they were placed as they are set out. The answer alleges that they were constructed for the purpose of permitting heavy goods and freight to be delivered to merchants and, at the request of the town, for the purpose of reaching its electric light plant. It is not very material what the purpose was, so far as the plaintiff is concerned. It would seem that if the town authorities intended to permit the use of the common and the streets for a depot or discharging point it should clearly appear, so that abutting owners and citizens interested should have opportunity to be heard in opposition thereto. The placing of a spur track from the main line to an electric light plant, in

which all the people of the town are interested and which
would involve but limited use, is quite a different matter from
placing it on the common preserved with so much wise fore-
sight by the original donor more than a century ago for the
uses and purposes testified by plaintiff.    In addition to the
authorities cited in *Thomason's case, supra,* the industry of
counsel, with additional investigation on our part, has dis-
covered some other decided cases in line with what we there
said and more directly applicable to the facts in this appeal.
In *Pennsylvania Railroad v. Angel,* 41 N. J. Eq., 316, the
plaintiff sought to enjoin defendant company from so using
its track laid along Bridge Avenue in the city of Camden as
to create a private nuisance.    It appeared that the track was
laid by authority conferred by the Legislature and the com-
mon council of the city.    It was shown that the company used
the track in front of complainant's dwelling for the purpose
of distributing cars, making up freight trains and keeping
locomotives and cars laden with live stock standing thereon,
etc.    *Dixon, J.,* said : "The fact that these nuisances are con-
tinuous and materially diminish the comfort of complainants
in their residence makes the case a proper one for an equita-
ble remedy by injunction, unless defendant can justify its
conduct."    To the first suggestion, that it was authorized to
so use its track, the Court, after noting the language of the
acts and ordinances, said : "In our judgment they indicate
that those rights are such as pertain to the use of the avenue
for the purposes of a way, not for the purposes of a station
yard.    The primary privilege given is that of passage; this
and its reasonable incidents cover the whole scope of the grant.
The right of storing engines and cars, either for a longer or
shorter period, the right of making up or breaking up trains
are not embodied in such a concession.    These are strictly
station and terminal purposes, and by providing for station
yards the Legislature has indicated its purpose that business
of that nature should be transacted there.    We do not say that

the company may not under any circumstances do upon its roadway what ought commonly to be done in its yards, for no doubt unforeseen occurrences may sometimes render such acts almost indispensable, and then other less urgent rights of the public at large must give way.   *   *   *   Having a right of passage there, it used its tracks as though they were within its terminal yards, and so used them constantly in everyday concerns." The Judge further said that if such right was conferred by the Legislature and common council it was invalid as against plaintiff's rights. The injunction to the extent of the nuisance was granted. In *Frankle v. Jackson,* 30 Fed. Rep., 399, *Brewer, J.,* said: "Although a railroad may not be liable in damages for the occupation of a street and the running of its trains thereon in a customary, reasonable and proper manner,   *   *   *   it may still be liable to damages for any unreasonable, improper, illegal and wrongful use of its tracks. The right to use a street for the running of trains gives no right to establish a repair shop thereon." In *Railroad v. Church,* 102 Fed. Rep., 85, it was held that a grant to a railroad company to operate and maintain a railroad on a public street does not carry by implication the right to erect and maintain a water tank in the street. The general and we may say universally accepted doctrine, as announced in the cases cited, is illustrated and discussed. *Louisville and Nashville Railroad v. Lillyett,* 1 L. R. A. (N. S.), 49. In *Mahody v. Railway Company,* 91 N. Y., 148, *Andrews, C. J.,* conceding the right of the city authorities to grant a surface railway company the use of its streets, says: "It cannot, however, be questioned that a street cannot be converted into a yard for the storing or deposit of cars to the injury of adjoining owners. An unreasonable use of the street by a street railway may doubtless afford a right of action to property owners specially injured thereby." *Thompson v. Railroad,* 51 N. J. L., 42. In *Railroad v. Patterson,* 67 Ill. App., 351, the plaintiff in error was permitted to

recover for improper use of a switch in front of his house. Without repeating the evidence, we think it sufficient to entitle the plaintiff to have the issue as to the manner in which defendant was using the spur track submitted to the jury under proper instructions. While it is difficult to draw the line with precision in each case between the lawful use of the track and its unlawful use, constituting an actionable nuisance, we think that in several respects the evidence would warrant a jury in finding that the defendant has used the spur track for other than legitimate purposes. There can be no question upon the evidence that the rights of the plaintiff and his family are seriously interfered with by such use as is made of the spur track. The nuisance alleged is not permanent. It does not arise from the construction, but the use of the spur track. The measure of damages would therefore be confined to such as were sustained within three years prior to the institution of the action. As the question is not before us, we forbear discussing it further than to quote from Joyce on the Law of Nuisances, sec. 260: "In case of a nuisance caused by the operation of a railroad in an unlawful manner the damage should only be for the injury caused by such unlawful operation of the road, and should not include an allowance for any injury caused by the lawful operation, the latter injury being declared to be *damnum obsque injuria.*" If the defendant violated the town ordinance in regard to the speed of its train the plaintiff has his remedy by applying to the municipal authorities or to a justice of the peace for a warrant for a misdemeanor. If the use of the spur track in violation of the rights of the plaintiff be continued he is entitled to injunctive relief. The judgment of his Honor on the first and second cause of action is affirmed. The judgment of nonsuit on the cause of action for damages for alleged unlawful use of the spur track as a nuisance is set aside and a new trial awarded. The issue and evidence will be confined to the allegation that defendant has within three years prior to the commencement

of this action so used the spur track and the street in violation of its duty as to constitute a nuisance, by which plaintiff has sustained special damage as an owner of the dwelling and premises abutting on the street.   It is so ordered.

Partial New Trial.