J. W. KIRKPATRICK ET AL. v. PIEDMONT TRACTION COMPANY.

(Filed 15 December, 1915.)

1. **Municipal Corporations — Streets — Abutting Owners — Railroads — Street Railways—Additional Servitude.**

    A street railway, under the usual acceptance of the term that such is a railway which takes on and discharges passengers at its various local stops, generally at the corners of streets in the town or city in which it operates, is regarded as facilitating rather than interfering with local traffic, and, as such, does not impose an additional servitude on the streets for which compensation may be had by the abutting owner.

2. **Same—Equipment—Incidents—Motive Power.**

    The operation of an ordinary steam railroad on the streets of a town or city imposes an additional burden to use the street for the purposes of the municipality, and where a railway, though operated by electricity, engages in hauling freight over its lines in trains of several freight cars, baggage and mail cars, etc., such as used by a steam railroad, with the incidental noises and inconveniences attending the operation of the ordinary steam railroads, with which it connects and exchanges traffic, it is regarded as an ordinary carrier of goods operating by steam, and requires that compensation be made to the abutting owner on the street for its additional servitude.

3. **Municipal Corporations — Streets — Railroads—Damages—Statutes—Common Law.**

    Where a statute authorizes the operation of a steam railroad along the streets of a city without providing for damages to the abutting owner for the additional servitude of the streets, the remedy for such compensation exists at common law.

4. **Municipal Corporations—Streets—Additional Servitude—Abutting Owner—Proprietary Interests—Damages.**

    It is not necessary that the abutting owner on a street should have the fee-simple title, subject to the city's easement, for him to recover damages for additional servitude thereon imposed by the operation of a steam railroad, for he has such proprietary interest in the street as will prevent its use for other than the public purposes of a street.

APPEAL by plaintiff from *Lane, J.,* at April Term, 1915, of GASTON. Civil action. At the conclusion of the evidence a motion to nonsuit was made and allowed. The plaintiff excepted and appealed.

*P. W. Garland, R. C. Patrick and Stewart & McRae for the plaintiff.* *Osborne, Cooke & Robinson for the defendant.*

BROWN, J. This action is brought to recover of the defendant damages for operating a commercial railroad, consisting of freight traffic as well as passenger traffic, along Franklin Avenue in the town of Gastonia, upon which the plaintiff lives in a house owned by him on a lot abutting upon the said avenue. The defendant operates a street car line of the city of Gastonia. The defendant also operates freight trains and interurban passenger trains over this avenue in front of plaintiff's house. The defendant's line of railroad runs from Gastonia to Charlotte, N. C. Its interurban passenger cars and trains carry passengers between these two points and intermediate points. Its freight trains likewise handle freight between these two points and intermediate points, and, in addition, it transfers its freight cars to the Seaboard Air Line Railway, the Southern Railway and the Carolina and Northwestern, and these roads in turn transfer cars from their lines, loaded with freight, to the defendant's lines. It is a regular standard-gauge railway, using electricity as a motive power instead of steam.

Plaintiff bases his right to recover on three different allegations, namely:

1. On account of the operation of freight trains and interurban passenger trains over the avenue in front of his property.

2. On account of the raising by the defendant of the grade of the avenue above the level of the plaintiff's lot.

3. On account of the taking of a strip of the plaintiff's lot and trespassing upon his lot by dumping earth thereon and otherwise damaging same.

We have held in this State, as in other States, that a street railway does not constitute an additional servitude for which the abutting lot-owner may recover, for the reason that it facilitates rather than impedes or interferes with local traffic. The term "street railway" has acquired a peculiar meaning and is well understood to be nothing more or less than a passenger railway which takes on and discharges passengers at its various local stops, generally at the corners of streets in the town or city in which it operates. *Hester v. Traction Co.*, 138 N. C., 293; *Merrick v. R. R.*, 118 N. C., 1081.

It has also been held in this State that the use of a public street for an ordinary steam railroad is not a legitimate use of the street for public purposes, and that the city cannot authorize the construction of such railroad along the public streets against the abutting proprietor's will without compensation to him for the injury sustained. *White v. R. R.*, 113 N. C., 610.

While the Legislature may authorize the use of a street by the railroad so as to make the entry lawful, such use is an additional burden, and the right will not become fixed in the company until the compensa-

tion is made. If no remedy is provided in the statute, there remains the remedy at common law. Mills on Eminent Domain, section 204.

It is immaterial, so far as recovering damages goes, whether the fee of the street is in the city or in the abutter. Although the abutting proprietor may not own the fee in the street, he has such proprietary interest in the same that will prevent its use from being perverted to other than public purposes as a street. *White v. R. R., supra; Staton v. R. R.,* 147 N. C., 428; *Butler v. Tobacco Co.,* 152 N. C., 417.

We are of opinion that, from the nature and description of the defendant's business, as given in the record, and the manner in which it operates its freight trains and interurban passenger trains, it should be classed as a "steam railway" and cannot be regarded as the ordinary street railway. The matter is not to be determined by the character of the motive power, but rather by the character of the business done, as well as the injury inflicted by it.

The testimony in this case tends to prove that the passenger cars used by the defendant in its interurban service are about the same size as those used on the great railroads of the country. These interurban passenger trains carry baggage, mail and other things that are carried by other passenger railways. The freight cars used by the defendant are similar to cars used on the ordinary railroads of the country and of the same standard gauge. These freight cars are transferred to other lines and the freight cars of other lines are transferred to this defendant's line in all respects as is the custom between the railroads of the country. The freight cars are the usual standard cars—about sixty feet long.

The plaintiff testifies:

"The dust is wafted on and into my house. My porch is six or eight feet from the sidewalk. The cars make a rumbling sound, creaking of wheels and ringing of bells and vibrations. I lived on the lot in question from the time I bought it in 1905 until I moved away from Gastonia in 1910. I have rented it since. In my opinion the difference in the market value of the property before and after the construction of the railroad is $2,000."

The testimony tends to prove that trains of freight cars, as many as five in number, with an engine ringing its bell, frequently pass along this street, and when they do the vibrations of the earth can be felt. The evidence tends to prove that these electric freight trains raise dust, blow whistles, vibrate the earth, roar with noise, and tend to imperil life as well as to injure property upon the street.

In 1 Lewis Eminent Domain, p. 287, it is said substantially that while the street passenger railway is a legitimate street use, the commercial railroad is not. In so far as it is operated as a street passenger railway in aid of the city travel, it is on the same basis as the urban street rail-

way; if not operated for the accommodation of the local travel, in substantially the same manner as the urban railway, it should be classed with the commercial railroad, with consequent liability to abutting owners..

In *Younkin v. Traction Co.*, 98 N. W., 215, where the defendant operated an electric street railway company and did an interurban passenger business, the Wisconsin Court said: "We must hold that the running of such interurban trains and cars over the street railway track upon Lincoln Avenue was an additional burden upon the lands of the plaintiff as such abutting lot-owner."

The same Court, in *Abbott v. Traction Co.*, 126 Wis., 634, 106 N. W., 523, 4 L. R. A. (N. S.), 202, held: That an electric interurban railway is additional servitude upon the street, and the abutting property owner is entitled to compensation therefor.

In *Wilder v. Traction Co.*, 216 Ill., 493, 75 N. E., 194, the Illinois Court held: "Where an electric street railway company, organized under the railroad law, as distinguished from the street railroad act, by the terms of its charter was authorized to operate through several counties and transport passengers, baggage, mail, express and milk, it was a commercial railroad, and was not entitled to lay its tracks in the street, the fee of which was in the abutting owners, without condemning the right to do so."

In *Schaaf v. R. R.*, 66 O. State, 215, 64 N. E., 145, where an electric interurban railroad was operated upon the public highway, and where the railway company had authority to run an unlimited number of cars and trains, for the carrying of passengers and the transportation of freight, express matter and Government mail, the Ohio Court held that *such a railroad constituted additional servitude for which the abutting property-owner was entitled to compensation.*

The following cases also hold that the abutter is entitled to compensation: *Aycock v. Brewing Co.*, 68 S. W., 953 (Tex.); *Rische v. Transcontinental Co.*, 66 S. W., 324; *Kinsey v. Traction Co.*, 81 N. E., 922-940 (Ill.).

It is useless to discuss the second and third grounds of damage set forth in the plaintiff's complaint. It is too plain for argument that if these allegations are true, they would constitute an element of damage for which the plaintiff would be entitled to recover.

The judgment of nonsuit is set aside and a new trial ordered.

Reversed.