NORTH CAROLINA and RICHMOND & DANVILLE RAILROAD COMPANY v. CAROLINA CENTRAL RAILWAY COMPANY and others.

*Condemnation of Land—Eminent Domain—Land acquired by Railroad.*

1. The Carolina Central railroad, under its charter (and being the successor of the rights and powers of the Wilmington, Charlotte and Rutherford railroad under its charter) and under the general railroad law, Acts 1871–2, ch. 138, has the power to institute proceedings for the condemnation of land necessary for the uses of the company.

2. Land, acquired by one railroad company under a legislative grant of the right of eminent domain and unnecessary for the exercise of its franchise or the discharge of its duties, is liable to be taken under the law of eminent domain for the use of another railroad company.

(*State* v. *R. & D. R. R. Co.*, 72 N. C., 634; *R. R. Co.* v. *Davis*, 2 Dev. & Bat., 451; *Washington Toll Bridge Co.* v. *Comm'rs*, 81 N. C., 491, cited and approved.)

MOTION for an Injunction heard at Chambers in Charlotte on the 8th of June, 1880, before *Schenck, J.*

The North Carolina railroad company, under its charter granted in 1849, and subsequent amendments, completed in 1853 its authorized line of railroad from Goldsboro to Charlotte, entering the city on the northeast at A street, and proceeding down the street to the place where its warehouse and depot buildings are located. On September 17th, 1871, the company leased its road and appurtenances for a series of years to the Richmond and Danville railroad company, its co-plaintiff, a corporation formed under the laws of Virginia, and authorized by its charter to accept the lease and the transfer under it, and to hold and operate the leased road, which contract has been adjudged valid in this court in the case of the *State.* v. *The R. & D. R. R. Co.*, 72 N. C., 634.

In February, 1855, by two successive acts of the general

assembly, the Wilmington, Charlotte and Rutherford railroad company was incorporated for the purpose of constructing a road from Wilmington to Rutherfordton with authority, out of separate subscriptions of stock, to begin the work at the same time at its eastern terminus and at Charlotte, and to proceed westward from both points along its projected line. The road was accordingly built, its eastern division as far as Wadesboro, and its western division to Lincolnton, when the company becoming embarrassed and unable to complete the road, the road-bed and other property of the corporation with its franchises were sold to the defendant, the Carolina Central railway company, incorporated in February, 1873, and invested with full power to purchase and hold the same and complete the work, extending the line to the western boundary of the state. For the western division a small station house or depot had been built near and outside the limits of the city of Charlotte, deemed to be sufficient for its business before the connection between its parts.

The defendant has continued the construction of the road until the junction of the two divisions has been effected—the road crossing the plaintiff's road before it enters the city, and extended twenty-two miles further west to Shelby in the direction of the proposed western terminus.

On December 31st, 1874, the lessee company and the defendant, to provide for the great increase of the business of the latter, entered into an arrangement for the joint use of the track along A street to a point at which the other railroads entering the city converge, and where they have erected large, commodious and expensive buildings for storage and safe keeping of goods *in transitu* from one to the other.

This track has been used in common until the lessee company, under an authority reserved in the contract, gave notice that the agreement for its joint use must *terminate*

on the 1st day of July, 1880. The defendant has expended large sums in the erection of necessary buildings at the place from which it is thus excluded and prevented from participating in the transportation of the freight arriving at the place and bound for northern seaports, which has become large and valuable and is constantly increasing.

The defendant company now in the hands of receivers, and apprehensive of the injury to its business from this sudden deprivation of its former facilities, with leave of the court under whose control it has been placed, has instituted proceedings before the clerk under its charter for the condemnation of a right of way over so much of the street as is traversed by the plaintiff's track, as will enable the defendant, without interfering with the use of the present road, to construct a parallel line down the street, and thus afford renewed access, such as was before possessed, to its freight depot thereon. The plaintiffs appeared and resisted the application. On the hearing before the clerk, he granted the prayer of the petitioner and appointed commissioners to examine the premises and condemn the land and right of way, necessary for the petitioner's relief, and to estimate the damages to be paid therefor, for a track extending from the said depot up A street to 9th street, along and on the west side of the plaintiff's track, not nearer thereto than eight feet, or so much thereof as may be necessary for the additional track. From this order the plaintiffs appealed to the superior court. Before action on the defendant's application by the clerk, the defendant entered upon the land and began the work, preparatory to laying down the rails of the new track, with full assent of the corporate authorities of Charlotte, when a restraining order issued in this action, with notice to the defendant to show cause why an injunction should not issue, interrupted the further progress of the work. Upon the hearing of the rule and the numerous affidavits read in evidence, His Honor finds

among others, as facts, in which he is fully supported by the proofs:

" That the depot is at the most approximate point to the business and mercantile portion of the city; and if the depot should be removed, it will result in the serious inconvenience and injury to shippers and business men, and will greatly cripple the business and usefulness of the defendant road which is a competing road with the plaintiffs."

" That a track for defendant road can be constructed in and along A street on the west side of plaintiff's track, and not less than eight feet therefrom, and can be occupied and used by defendant road with its engine and cars, without injury to the plaintiff company or interference with its transportation and business, present or probable future:"

" That the only (other) railway track on A street is that of the defendant company which has two side tracks therein, one 750 feet, the other 7300 feet in length from the depot extending north, the latter of which it is proposed to extend through A street to the crossing; and that both have been in the exclusive adverse occupation of the defendant company since 1874:

" That there is no other way of reaching the depot through the corporate limits of the city than through A street, that can be obtained without great trouble and expense, if at all:

" That should the plaintiff company ever need a double track, as claimed, or desire to construct such, it can be done on its right of way on the east side of its present track as conveniently as on the west side."

The court therefore disallowed the motion for an injunction and from the judgment the plaintiffs appeal.

*Messrs. Graham & Ruffin, Jones & Johnston,* and *W. W. Fleming,* for plaintiff:

*Messrs. Bynum & Grier* and *Clement Dowd,* for defendant.

Smith, C. J., after stating the case. While we suggest, we do not propose to pursue the enquiry whether the facts disclosed present a case of irreparable damage, for which, according to the established practice, a restraining order may be sought to stop the further progress of the work, nor whether the pendency of the proceeding for condemnation of a right of way will not be a barrier to the prosecution of the present action, since we fully concur with the rulings of the court upon the merits of the controversy, so far as they can be properly considered at this preliminary stage of the case, and upon the insufficiency of the reasons assigned for demanding the injunction.

The main if not the only important questions discussed before us are two :

1. Has the defendant company a right to proceed for condemnation of land for its use or has its power for such purpose been exhausted?

2. Is the land acquired and used for the North Carolina railroad company, liable under the law of eminent domain to be taken for the use of the defendant company?

We will examine and pass upon these enquiries, a negative answer to either whereof would be fatal to the success of the condemnatory proceeding.

*First.*—The first enquiry must be resolved by reference to the charter of the defendant company and the general law applicable to railroad corporations. As the successor of the Wilmington, Charlotte and Rutherford railroad under the purchase made at the judicial sale mentioned in section 15 of the charter, it succeeded also to " all the estate and property " of that company and to " all its contracts, franchises, rights, privileges and immunities," and hence could prosecute the unfinished work, as originally contemplated in like manner and with the same means as its dissolved predecessor. The charter of the latter (sec. 26,) expressly confers the right to condemn lands or a right of way over them, for

the use of the road, not to exceed a width of prescribed limits, in the absence of any agreement, or when " from any other cause the same cannot be purchased from the owner," and directs the mode of proceeding for the exercise of the right. Acts (Private) 1854–'55, ch. 225.

With slight modifications the defendant company is clothed with the same authority in section 8, which provides, " that when any lands or right of way shall be demanded by said company or condemned for the purpose of constructing their railway, or *branches or feeders*, and for want of agreement as to the value thereof, or from any other cause the same cannot be or is not purchased from the owner, the same may be taken at a valuation to be made by three commissioners, or a majority of them, to be appointed by the clerk of the superior court of the county where some part of such land or right of way is situated." Act 1872–73, ch. 75.

In concurrence will be found the provisions contained in the enactment of 1871–'72, for the formation of railroad companies, section 25 of which authorizes the board of directors by a vote of two-thirds of their whole number, at any time " to alter or change the route or any part of the route of their road, if it shall appear to them that the line can be improved thereby," and confers the like powers of acquiring lands needed for the changed as for the original route, and when the change is " made in any city or village after the road shall have been constructed," the sanction thereto is required to be given " by a vote of two-thirds of the corporate authorities of said city or trustees of said village." Bat. Rev., ch. 99, entitled Railroad Companies, sec. 25.

While this section is primarily applicable to roads formed under the act, it is extended with other enumerated sections to " all existing railroad corporations within this state." Sec. 45.

These references sufficiently sustain the claim of the de-. fendant to resort to the right of eminent domain, when necessary to acquire lands for such uses as are contemplated in the present case, and are alike demanded by the interest of the company and the convenience of the public.

*Secondly.*—Is the property of the North Carolina railroad company subject to condemnation for the use of another?

We see no reason why land obtained under a legislative grant of the right of eminent domain, should be exempt from its exercise when the public interest requires it for other public uses, any more than other lands held by individuals. The rights of property thus invaded are as sacred in the one case as in the other, and equally protected in the fundamental law; and both are and must be subordinate to the demand of the state for public and useful purposes. The exercise of the power of eminent domain over the property of public corporations may be however subject to limitations not strictly applicable to other property. It is reasonable, as contended in the argument for the plaintiffs, that land of one such corporation, necessary for the exercise of its franchise and to the discharge of its duties, should not be taken and appropriated by another corporation no more important or useful, unless upon a clear expression of the legislative intent to confer it, and then the act itself would be a declaration that the condemnation was required for the public good. If the present application were to have this effect and seriously injure the business of the plaintiff companies, we should hesitate to hold that the right of way demanded by the defendant could be condemned under the general words found in its charter. But it is entirely otherwise. No real interruption of the plaintiff's business, no interference with the exercise of the franchises conferred in the charter, and, in the opinion of the witnesses, little or no inconvenience to transportation, will result from the construction of another track by the side of that of the plain-

tiff's, and eight feet or more from it as proposed to be done by the commissioners. At least such additional track can be laid down, and if built will not seriously, if at all, disturb the operations of the plaintiff companies, or their putting down and using a second track when required for an enlarged transportation in the future.

The right to construct and operate lines of telegraph along any railroad or other public highway in the state, and to obtain the right of way therefor by a condemnatory proceeding, is expressly conferred upon any telegraph company, incorporated by this or by any other state, by chapter 203 of the acts 1874–'75. The erection of poles with telegraphic wires from one to the other, along the line of the road, cannot obstruct the transportation of freight or the carriage of passengers over it, and thus two objects of great public usefulness are accomplished without detriment to either. Why, when only a similar privilege is demanded by one railroad of another, involving the common use of the same land by separate and non-interfering tracks for a few hundred feet only, and when this is the only route by which its own depot and the common terminus of other roads can be reached, should it be denied to the defendant company? This view is in conformity with adjudged cases.

In *West River Br. Co.* v. *Dix*, 6 How., 507, the supreme court of the United States held that the bridge of an incorporated company, built and maintained under a charter from the state, could be taken and condemned as part of a public road under the laws of that state. In the opinion of the court this language is employed: " A franchise to erect a bridge, to construct a road, to keep a ferry, and to collect tolls upon them, granted by the authority of the state, we regard as occupying the same position, with respect to the paramount power and duty of the state to protect and promote the public good, as does the right of the citizen to the possession and enjoyment of his land under his patent or

contract with the state, and it can no more interpose any obstruction in the way of their just exertion."

The same proposition is reiterated in almost similar terms in *The R. & F. R. R. Co.* v. *The Lo. R R Co.*, 13 How., 71, and Grier , who spoke for the court refers to one point made in the bill as follows: "The counsel very properly have not insisted, in their argument in this court, on this point, that the legislature had no power to authorize the construction of one railroad across another."

In *Springfield* v. *Con. River R.*, 4 Cushing, 63, a bill was brought to enjoin the defendant company from maintaining a railroad and running cars thereon, over a highway in Springfield; Shaw, C. J., expresses the opinion that a grant of power by legislative act to lay out a railroad, where the precise course and direction between the *termini* are not prescribed, but left to the discretion of the corporation, does not confer authority, *prima facie*, to lay the railroad on and along an existing highway longitudinally, or in other words, to take the road-bed of the highway as the track of the road, and accordingly ordered an enquiry, "whether it was by fair and reasonable intendment necessary to lay and construct the same upon and along Front street or either of the public ways in Cabotville or not." In reference however to the condemnation of the one for the use of another, he adds: "But the court are of opinion that it is competent for the legislature under the right of eminent domain, to grant such authority. * * * The grant of land for one public use must yield to that of another more urgent." In the conclusion of the opinion he says: "The grant of a right is, by reasonable construction, a grant of power to do all the acts reasonably necessary to its enjoyment. It is not an absolute or physical necessity, absolutely preventing its being laid elsewhere; but if to the minds of reasonable men conversant with the subject, another line could have been adopted between the *termini*, without taking the high-

32

way, reasonably sufficient to accommodate all the interests concerned, and to accomplish the objects for which the grant was made, then there was no such necessity as to warrant the presumption that the legislature intended to authorize the taking the highway."

It is plain the facts of the present application meet all the conditions and requirements of the rule laid down by the supreme court of Massachusetts, and we forbear further discussion of the subject, and refer only to a few additional authorities — *Ches. & Oh. Can. Co.* v. *Balt. & Oh. R. Co.*, 4 Gill & Johns, 1; *Beekman* v. *Sar. & Schen. R. Co.*, 3 Paige, 45; *Chas. River Br.* v. *Warren Bridge*, 7 Pick., 394; *R. & G. R. R. Co.* v. *Davis*, 2 D. & B., 451; *Wash. Toll Bridge* v. *Commr's*, 81 N. C., 491; 1 Red. R. R., 261, 312, 313.

We have an instance of the facility with which parallel tracks, near to each other, may be operated without inconvenience to either, in that portion of the plaintiff's road running from Raleigh west, along which passes for several miles that of the Raleigh and Augusta Air-Line railroad, until the latter crossing the other proceeds in another and different direction.

We see no ground for apprehending an injury to the plaintiff's road by allowing the defendant to construct that, the necessity for which is produced by the withdrawal of the leave to use one for both, in order to re-open the way to its depot, and to renew connection with other roads, and thus to admit of convenient transfer of through freights from one to another.

We therefore sustain the refusal of the injunction and affirm the judgment. Let this be certified.

No error. Affirmed.

In a Case Between Same Parties:

Smith, C. J. The opinion in the case between the same parties with positions reversed disposes of the similar ques-

tions involved in this appeal and the repetition of what is there said and held needless. We advert to a single point not made in the argument, to avoid any inference from our silence to notice it. It is as to the right of appeal from the order appointing commissioners to lay out the right of way and define the limits of the land required, and also to assess the damages for taking the same. The right of appeal is expressly given to persons over whose lands the railway or its branches may pass, after the commissioners have acted and their report has been confirmed, and who may be "dissatisfied with the valuation of the commissioners," by the 9th section of the charter of the plaintiff company. Acts 1872–73, ch. 75.

This provision for an appeal at this stage of the proceeding would seem to imply an absence of such right at an earlier period, which if allowed might be exercised to the embarrassment and delay of the enterprise, and be attended with other serious inconveniences. We have accordingly held at this term that an appeal does not lie from an order appointing commissioners under proceedings instituted by telegraph companies, in the case of *The U. Tel. Co. v. W. & W. R. R. Co., ante,* 420.

Nor do we see how such an order " affects a substantial right claimed" within C. C. P., § 229, since the appeal which is allowed will bring for review the legality and regularity of the order of appointment if there be exceptions thereto, as well as of the confirmation. There is no error and this will be certified to the court below.

No error.                                                 Affirmed.