J. H. WISSLER ET AL. v. YADKIN RIVER POWER COMPANY.

(Filed 3 April, 1912.)

1. Eminent Domain — Electric Companies — Condemnation—Public Uses—Interpretation of Statutes.

A corporation engaged in manufacturing or producing electricity for the purpose of distribution and sale to its users, and for the operation of railways and other purposes, may exercise the power of eminent domain and condemn lands for the erection of poles, the establishment of offices, and other appropriate purposes, under authority of the Revisal, secs. 1571-1577, upon making a just compensation therefor; and such is not a taking of private property for a private use.

2. Eminent Domain—Electric Companies—Condemnation—Constitutional Law.

The provisions of sections 1571-1577, empowering electric power or lighting companies, etc., to condemn lands for the erection of poles, establishment of offices, and other appropriate purposes, are constitutional and valid.

APPEAL from order of *Ferguson, J.,* heard at chambers, 21 September, 1911, from LEE.

Motion for injunction to enjoin the defendant from entering upon the lands of the plaintiff. The injunction was denied, and the plaintiff appealed.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Brown.*

*A. C. Davis, Aycock & Winston, and A. A. F. Seawell for the plaintiff.*

*McIver & Williams for the defendant.*

158—30

BROWN, J. The defendant by proper proceedings has condemned the right of way across the plaintiff's land for the erection of its electric light poles and other appropriate purposes, and has paid into court damages assessed, and is now in the enjoyment of the easement.

The ground upon which the application for the injunction order is based is that the use to which the property condemned is to be put is private use, and not a public one. It is not denied that under the general law of the State under which the defendant has been incorporated it has been invested with the power of eminent domain, but it is contended by the plaintiff that inasmuch as the use is a private one, no such power can be lawfully conferred.

It is admitted that under the provisions of chapter 32, secs. 1571-1577, electric companies, such as telegraph, telephone, electric power, or lighting companies, are invested with the power to condemn property for the erection of poles, the establishment of offices, and other appropriate purposes upon making a just compensation therefor.

We find upon examination of the defendant's charter that it undertakes to manufacture, produce, sell, furnish, and distribute electricity for the operation of street railways, of all kinds and descriptions, and to sell electricity to the public, and to supply electricity in any form and for any purpose whatever.

The phrase "eminent domain" has been so frequently defined that it needs no further definition at our hands. It originated in the writings of an eminent publicist, Grotius, in 1625, who says: "The property of subjects is under the eminent domain of the State, so that the State, or he who acts for it, may use and even alienate and destroy such property, not only in case of extreme necessity, in which even private persons have a right over the property of others, but for ends of public utility, to which ends those who founded civil society must be supposed to have intended that private ends should give way." Grotius De Jure Belli et Pacis, Lib., 3, C. 20.

This power of eminent domain is conferred upon corporations affected with public use, not so much for the benefit of the corporations themselves, but for the use and benefit of the people at

large.  What are *public utilities* has been pretty well settled by
the courts, but with the advance of science and the arts the
scope of such utilities must necessarily be constantly increased.

That the power of condemnation could be lawfully conferred
upon railroad companies, telephone and telegraph companies,
has long since been settled by repeated decisions, as the owner
or manager of such industries becomes voluntarily the agent or
servant of the public.  The vast growth in the knowledge
acquired concerning the uses of electricity has made it possible
to extend that subtle but powerful agent to many forms of
industry, and to divide its efficacy into many desired portions,
and to freely transmit it to almost any point for use.  To make
this agency useful to man requires capital for its extension, as
well as the power to extend its operations even against the will
of an individual.

In commenting upon the wonderful growth of operations
conducted by electrical power, Mr. Lewis says:  "All of these
considerations tend to show that the use of land for collecting,
storing, and distributing electricity, for the purpose of supply-
ing power and heat to all who may desire it, is a public use,
similar in character to the use of land for collecting, storing,
and distributing water for public needs—a use that is so mani-
festly public that it is seldom questioned, and never denied."
1 Lewis on Eminent Domain, sec. 268; *L. and P. Co. v. Hobbs,*
72 N. H., 531; *Jones v. Electric Co.,* 125 Ga., 618; *Goddard v.
Railway Co.,* 104 Ill. App., 533; *Palmer v. Electric Co.,* 158
N. Y., 231.

In a recent case in New York it has been held that the fur-
nishing of electricity for the use of the inhabitants, or for
illuminating purposes, and for the use of surface railroads, con-
stitute public use within the definition of that term as used with
reference to the right of eminent domain.  *In re Niagara L.
and O. Power Co.,* 97 N. Y. Sup., 853; *Prince v. Crocker,* 166
Mass., 347.  Joyce on Electric Law declares that the supplying
of electricity to the citizens of a town, or to the public generally,
is a public use, citing many cases which, upon examination,
sustain the text.  1 Joyce, sec. 276.

In vol. 15, Cyc., page 600, it is said: "The exercise of the right of eminent domain for the purpose of erecting and maintaining electric light plants for public and private lighting is not for a private use." And this Court, as late as 154 N. C., 131, in *Turner v. Power Co.,* expressly holds that "Corporations engaged in furnishing electric power and lights to its patrons in the exercise of chartered rights and privileges conferred by the lawmaking power, in part for the public benefit, are *quasi*-public corporations."

Nichols on Eminent Domain, sec. 277, says in substance that the furnishing of any kind of artificial light, as well as power, by gas or electricity, for the use of the public is public purpose, in aid of which the power of eminent domain may be lawfully invoked.

The authorities all seem to be uniform on this subject, and to multiply them is easy, but useless. The judgment of the Superior Court is

Affirmed.