EMMA F. SCOTT AND HUSBAND, A. J. SCOTT, v. THE BOARD OF
COMMISSIONERS OF CABARRUS COUNTY.

(Filed 8 December, 1915.)

**Roads and Highways—Relocation—Injunction—Damages—Appeal—Constitutional Law.**

By provision of ch. 201, Laws 1907, relating to the public roads of Cabarrus County, the superintendent is empowered to locate, relocate, widen or otherwise change any public road or part thereof, after filing a petition and map with the board of county commissioners, containing estimated cost and other data, and the superintendent is also required to notify the landowners, who are allowed the right of appeal from the order of the commissioners, providing for a trial *de novo* in the Superior Court, and for the award of compensation, but that the appeal shall not delay the construction of the road. In this suit to restrain the construction of a proposed relocation, it appeared by affidavit that it would cause permanent and serious damage to the plaintiff's land, and, in defendant's behalf, that the old road could not properly be kept up on account of springs, a watercourse and the low lay of the land, and that the proposed relocation had been worked on with expense, and that the public convenience of travel required it: *Held*, an order restraining the relocation of the road to the hearing was properly dissolved.

APPEAL by plaintiff from *Shaw, J.*, at April Term, 1915, of CABARRUS.

Proceeding instituted before the board of commissioners of Cabarrus County in reference to a change of location in a public road, known as the Salisbury road, heard on appeal from the order of commissioners therein to the Superior Court, and on motion to dissolve a preliminary restraining order.

There was judgment dissolving the restraining order, and plaintiffs, having duly excepted, appealed to this Court.

*L. T. Hartsell and Morrison Caldwell for plaintiff.*
*H. S. Williams and J. L. Crowell for defendant.*

HOKE, J. The public road law of Cabarrus County, Laws 1907, ch. 201, secs. 14 and 15, contains provision, among other things, that the superintendent of roads shall have power to locate, relocate, widen or otherwise change any public road, or parts of same, in the county, or lay out and establish a new public road, whenever such location, change, etc., shall be considered necessary and advantageous to public travel, etc., but before doing so he is required to file a petition before the board of commissioners stating the proposed changes, with a map, the estimated costs, number of culverts, bridges, etc. The superintendent is also required to notify the interested landowners, etc. If the proposed change is ordered, the same shall amount to a condemnation, etc., and the superintendent shall proceed to construct the road pursuant to the plan as approved and ordered. In reference to the right of appeal, sec. 15

makes provision: "That any landowner interested may appeal to the Superior Court for a trial *de novo,* on giving a bond for costs," but "the taking of said appeal shall not delay the changing, locating or relocating of any public road or the discontinuing or abandoning of any public road, according to the terms of the order made therein by the said board of commissioners, unless the same be reversed by the trial in the Superior Court." The statute also makes ample provision for compensation to any landowner injured by the proposed changes. In the present case, the commissioners having made an order for the proposed location, plaintiffs appealed and filed in the Superior Court their verified complaint, used on the hearing as their affidavit and evidence, and in which they specify the reasons why the restraining order should be continued to the hearing, as follows:

"(a) Because the line or route recommended by J. M. Burrage, superintendent of roads, at March meeting of the board of commissioners, is such a change as is not "necessary and advantageous to public travel" as provided by chapter 201, Public Laws of North Carolina, 1907, the same being about 15 feet shorter than the present road; and said road will be much more expensive to the county to build and will greatly damage said landowners, Emma F. Scott and husband, A. J. Scott.

"(b) Because the plan and purpose of said superintendent of roads to erect a fill 40 feet wide and 7 to 10 feet high across the bottom lands of Emma F. Scott and husband, A. J. Scott, and to leave an opening of about 110 feet, will cause the water of said creek to be dammed and flooded over the 25 acres of their land upon which they have been assessed $20 per acre by drainage district, to their great injury and damage.

"(c) Because the said change of road and said embankment will cut off from their pasture a branch of water that has been used for more than twenty years to water their cattle, and this damage and deprivation of the use of their branch water could be entirely avoided if the road be not changed.

"(d) Because said plan and change of the road, as laid out, calls for a cut 8 feet deep within less than 50 feet of the plaintiffs' residence and will cause the destruction of a number of fine elm trees in their yard.

"(e) Because said road will take about 4 acres of their best land, which has been improved at great expense, and will cut off a narrow strip of land between said road and the dower tract and present road. Said strip will be so narrow as to be almost worthless to them."

The commissioners, in their verified answer, also used as an affidavit, give a detailed statement of the proceedings, and, among other things, make averment as follows:

"That the public road in controversy in this proceeding is one of the public roads leading out from the city of Concord, the county-seat of

Cabarrus County, and is a continuation of East Depot Street from the corporate limits, and is known as the new Salisbury road. That said public road runs through one of the best and most thickly settled sections of Cabarrus County, and the citizens who live in that part of the county have no other public road leading from said sections except the road in controversy, the said road having been a public road, much used since the town of Concord was established. On account of the many hills, springs and boggy places in the old road, it becomes very bad and almost impassable in bad weather, and the rural mail carriers and traffic and the citizens and general public, who are forced to use this road in coming to and returning from market, and for other purposes, have for a long time complained of the bad condition of this road and have repeatedly demanded of the county to change and improve it; and in order to get the best results for the public money necessary to build a permanent road, and one which will be the greatest good to the greatest number, with the minimum inconvenience and least damage to the lands of those over which the changes in the proposed road are to run, the authorities of the county, after mature consideration, adopted the line surveyed over the lands claimed by plaintiffs, and defendants now believe the changes proposed and adopted by them are the ones that should be carried to completion as speedily as possible for the convenience of the general public.

"That the portion of said road which it is proposed to change, and which plaintiffs oppose and seek to enjoin, is partly across a low, boggy bottom, and a branch flows along the old road a greater part of the distance across said bottom, which is overflowed by Big Cold Water Creek whenever it overflows its banks, and the other part is a long, steep hill with a number of wet and springy places in same, thus constituting one of the worst sections of public road in Cabarrus County, and on account of the topography and physical condition of the land in which this section of the road lies, makes the proposed change absolutely necessary and very advantageous to public travel; it being impossible to make a good road across the said low or bottom land without making a fill several feet high, and it is impracticable to build said fill in the old road because of the branch which runs along for some nine hundred feet across said bottom, and the wet, springy places at other points along said old road and the dirt necessary to make a proper fill across said bottom cannot be gotten by following the said road up said hill without hauling said dirt for a long distance and necessitating making a cut several feet deeper than the one about eighteen inches deep contemplated by defendants in front of the house where plaintiffs reside; and, besides, the proposed change is shorter and more direct, affording a better grade and drain to the roadbed at much less cost and expense to the county than to make a road where the old road runs; and, when completed, will be

well drained and much more desirable and advantageous to the public travel, and a more permanent roadbed, and less expensive to keep in good condition than to build the road along the old roadbed or in another place."

The affidavit of the commissioners contains further and elaborate statement of the conditions making it impossible to use or improve the old road to advantage, and further, that large sums of money have been already spent in preparing the present road for use and necessary bridges built at great expense, and that if this road and its use. should now be stopped by restraint, large numbers of citizens would be without the use of a public way.on which to travel and would cause irreparable and unnecessary damage to the county and the public.

The affidavit then closes with allegations as follows:

"The work has been about completed on the west side of the creek, between said creek and Concord, and if the defendants should be restrained from continuing said work on east side of said creek the result would be to force the authorities of the county to move the convict force and camp to some other section of the county, and the abandonment of the work of this road, and insure a large and unnecessary expense to the county and work a very great hardship and inconvenience to the citizens in this whole section of the county and upon the public travel; and instead of said proposed change of road working any hardships or inconvenience upon plaintiffs or injuring or damaging them, it would be a great convenience and benefit to them and enhance the value of the property they claim more than any other.property along said improved road; but even if said change should damage the property of plaintiffs, they have their remedy in an action for damages. And a public improvement so necessary and advantageous to such a large number of citizens and taxpayers of the county and the general public, which aids the development of the resources of the county, should not be interfered with and stopped because of the objection of the plaintiffs."

Upon these, the affidavits and evidence of the respective parties, we think the case presented in the record, as it now appears, is one where, under many decisions of our Court, the private right must yield, for the present, at least, to the public good, and that the restraining order was properly dissolved. *Jones v. Lassiter,* 169 N. C., 750; *Little v. Lenoir,* 151 N. C., 415; *Griffin v. R. R.,* 150 N. C., 312; *Durham v. Cotton Mills,* 141 N. C., 615; *Vickers v. Durham,* 132 N. C., 880; *Dorsey v. Allen,* 85 N. C., 358.

Not only is this true on general equitable principles, as illustrated and approved in these decisions, but it undoubtedly should prevail in this case; the statute itself containing express provision that, when the proposed plan or scheme is approved by the board of commissioners, the work shall not be delayed unless the same be reversed by the trial in the

Superior Court—a provision that is clearly not unreasonable, on perusal of the present record.

As heretofore stated, the statute makes express and adequate provision for an award of damages if plaintiffs have been wrongfully injured in the proposed location of the road.

There is no error, and the order of his Honor is

Affirmed.