## YADKIN COUNTY v. CITY OF HIGH POINT ET AL.

### (Filed 17 April, 1940.)

1. **Eminent Domain § 1—Ordinarily, property used for public purposes may not be condemned for another public purpose without legislative authority.**

   Ordinarily, the power of eminent domain extends only to the right to condemn private property for public use, and property already in use for a public purpose cannot be condemned for another public purpose in the absence of legislative authority, express or necessarily implied, and a general authorization to exercise the power of eminent domain will not suffice, especially when the property in use for a public purpose is owned by an instrumentality of the State, but the general rule is subject to possible exception when the property sought to be condemned is not in actual public use or is not vital to such purpose, or where the additional easement would not seriously interfere with the first use.

2. **Appeal and Error § 37e—**

   Where the entire controversy, both as to questions of law and issues of fact, is submitted to the court by agreement, the court's findings of fact have the force and effect of a verdict of a jury, and the parties are bound thereby.

3. **Eminent Domain § 1—Municipality held without authority to condemn for public purpose part of lands used for County Home site.**

   Plaintiff county instituted this action against defendant municipality to restrain the municipality from constructing a dam for a municipal hydro-electric generating system, and the entire controversy was submitted to the court by agreement. The court found as a fact that the proposed dam would flood approximately 25 acres of the 159-acre County Home site and that the taking of the 25 acres would be for a purpose wholly inconsistent with the public use to which it is now devoted. Defendant municipality cited no statutory authority specifically authorizing it to condemn the land in question. *Held:* The municipality has no authority to condemn the land already in use for a public purpose and owned by a political subdivision of the State, and its contentions that the condemnation would not materially interfere with the prior public use and that it was authorized by the Legislature to condemn the said land by necessary

implication from the power granted by general law to construct the hydro-electric generating plant, are unavailing in view of the contrary findings of the trial court, which are binding upon the municipality.

**4. Same—Municipality held without authority to condemn for public purpose portions of county highways.**

Plaintiff county instituted this action to restrain defendant municipality from constructing a dam for a municipal hydroelectric generating system, and the entire controversy was submitted to the court by agreement. The trial court found that the proposed dam would flood county highways at a number of places and submerge various bridges on these county roads, necessitating the abandonment of the highways and resulting in rendering inaccessible large areas in which are located homes, schools and churches. *Held:* The municipality is without authority to condemn the portions of the county highways, since no express authority had been granted it to do so, and since legislative authority cannot be implied by necessary implication from the general power granted it to construct the hydroelectric generating system, nor from the provisions of C. S., 2791, 2792, which grant general power of condemnation only, nor from chapter 117, Public Laws of 1939, which purports to validate bonds theretofore issued by local units for PWA projects, without any reference to the power of eminent domain.

APPEAL by defendants from *Sink, J.,* at Special June Term, 1939, of YADKIN.

Civil action to restrain the defendants from constructing dam and reservoir on Yadkin River for use in operation of hydroelectric plant.

Due to the issues involved, the Attorney-General of the State petitioned the court and was allowed to appear in the case as *amicus curiæ.*

On the hearing, it was agreed by all the parties that a jury trial should be waived, and that the whole matter should be submitted to the court for final determination, both as to the law and the facts. It was further stipulated that the issues involving the authority of the defendant city to proceed with the project should be heard and determined on the evidence taken in the case of "J. W. McGuinn *et al. v.* City of High Point," pending in the Superior Court of Guilford County.

At the conclusion of plaintiff's evidence, a nonsuit was entered on the allegations of loss which might result to the plaintiff by reason of the removal from the tax books of the county large taxable assets in the event the proposed hydroelectric plant was constructed. The plaintiff noted an exception to this ruling, but has not appealed.

In summary, the essential determinations and conclusions of the court follow:

1. That Yadkin County is a municipal corporation and political subdivision of the State.

2. That the city of High Point is a duly chartered municipal corporation of the State, and the other defendants constitute the city council and the board of power commissioners of the defendant city.

3. That the dam for the hydroelectric plant which the defendants propose to construct on the Yadkin River is designed to impound "231,000 acre feet of water covering approximately 14,750 acres of land and adversely affecting approximately a similar acreage," which reservoir area lies within the counties of Davie, Yadkin and Forsyth with a total shore line of about 290 miles.

4. That the dam, if built as designed, would submerge and render totally impracticable for the public use to which it is now appropriated approximately 25 acres of the Yadkin County Home site which for many years has been devoted to a public use, *i.e.,* the care and protection of the indigent of the county, and is the only lowland on the 159 acres in the tract. The taking of this property by the defendants would be for a purpose wholly inconsistent with the public use to which it is now devoted.

5. That the proposed project, if constructed as designed, would inundate the county highways of Yadkin County at fifteen places, ranging from one-tenth of a mile to a mile and a tenth, necessitating their abandonment; that it would also submerge various bridges on these county roads, and make inaccessible large areas containing sites now used for homes, schools and churches.

6. That the Commissioners of Yadkin County have not consented to the abandonment, sale or surrender either of the county highways in question or that portion of the County Home site proposed to be flooded.

(The findings in respect of the navigability of the Yadkin River in North Carolina and as bearing upon the acceptance by the city of a license from the Federal Power Commission are presently omitted for reasons hereafter to appear.)

7. That the proposed plant and system cannot be operated for the maximum benefit of the taxpayers of the city of High Point, and, at the same time, in keeping with the license issued by the Federal Power Commission under which the defendants propose to operate it because the terms and conditions of this license are incapable of being carried out except to the detriment and diminuation of the power production of the plant.

Upon these findings, the court concluded (1) that the city of High Point is without authority to condemn any part of the Yadkin County Home site or any of the Yadkin County highways in question; (2) that the city is likewise without authority to accede to the terms and conditions of the license issued by the Federal Power Commission for the construction, maintenance and operation of the proposed project. Whereupon, injunction was granted in accordance with the prayer of the plaintiff, from which the defendants appeal, assigning errors.

*D. L. Kelly, B. S. Womble and W. P. Sandridge* for plaintiff, appellee.
*G. H. Jones and Roy L. Deal* for defendants, appellants.
*Attorney-General McMullan and Assistant Attorney-General Bruton,*
amici curiæ.

STACY, C. J.    We are here dealing with the same project that was the subject of consideration in the companion case of *McGuinn v. High Point, ante,* 449.    What is there said in respect of the determinations pertaining to the navigability of the Yadkin River in North Carolina and the authority of the city of High Point to accede to the terms and conditions of the license issued by the Federal Power Commission will suffice for the similar determinations made in the instant case.

The present record contains the further specific finding of incompatibility between the obligations assumed by the city of High Point in agreeing to abide by all the conditions imposed in the license issued by the Federal Power Commission and its duties as a municipality.

The remaining question, then, and the principal one here, is whether the city of High Point can lawfully condemn (1) a portion of the County Home site and (2) the fifteen sections of the county highways of Yadkin County in the circumstances as shown by the record.    The trial court answered in the negative and we cannot say there is error in the ruling.

First.    The defendants concede that their right to condemn the 25 acres of lowland on the Yadkin County Home site may be doubtful. They cite no statutory authority for the right, either express or implied. However, they claim it as a matter of necessity or as not materially interfering with a prior right.    See *Penn. Railroad Co.'s Appeal,* 93 Pa., 150, on the doctrine of necessity; also *Easthampton v. County Comrs.,* 154 Mass., 424, on the defendants' suggestion of "balancing conveniences."

The power of eminent domain, as generally understood, extends only to the right to condemn private property for public uses.    *Wissler v. Power Co.,* 158 N. C., 465, 74 S. E., 460; *Jeffress v. Greenville,* 154 N. C., 490, 70 S. E., 919.    It is for the General Assembly to say whether in the particular case or under certain conditions, the power shall be enlarged to embrace public property and property devoted to a public use as well as private property.    10 R. C. L., 198.    The authorities are to the effect that a general authorization to exercise the power of eminent domain will not suffice in a case where property already dedicated to a public use is sought to be condemned for another public use which is totally inconsistent with the first or former use.    *R. R. v. R. R.,* 83 N. C., 489; 20 C. J., 602.    In such a case a specific legislative grant or one of unmistakable intent is required.    *Vermont Hydroelectric Corp. v.*

*Dunn et al.,* 95 Vt., 144, 112 Atl., 223, 12 A. L. R., 1495; *Minnesota Power & Light Co. v. State,* 177 Minn., 343, 225 N. W., 164; *City of Albuquerque v. Garcia,* 17 N. Mex., 445, 130 Pac., 118; *Village of Ridgewood v. Glen Rock,* 15 N. J. Misc., 65, 188 Atl., 698. Especially insistent are the cases where the property sought to be condemned for a second public use is owned by an agency of the Government, or a subdivision thereof, and by it devoted to a state purpose. *City of St. Louis v. Moore,* 269 Mo., 430, 190 S. W., 867.

It will be noted that the county property here sought to be condemned is already devoted to a public use. Its condemnation for a second inconsistent public use, which is necessarily destructive of the first, may not be accomplished except under legislative authority given in express terms or by necessary implication. *Fayetteville Street Ry. v. R. R.,* 142 N. C., 423, 55 S. E., 345. Admittedly, the city of High Point is without such authority here. *Selma v. Nobles,* 183 N. C., 322, 111 S. E., 543.

The precise question was before the Supreme Court of Pennsylvania in Appeal of Tyrone Township School District, 1 Monag. (Pa.), 20, 15 Atl., 667. There the board of directors of a school district undertook to condemn three-fourths of an acre of land on a farm consisting of 172 acres, belonging to the county and used for the care and support of the poor of the county, under a statute authorizing the board to condemn not more than an acre of land for school purposes. It was held that the terms of the statute were not sufficient to authorize the taking of property already appropriated to another public use.

To like effect is the decision in *City of Edwardsville v. Madison County,* 251 Ill., 265, 96 N. E., 238, where the city of Edwardsville sought to open a street within its corporate limits through the Madison County poor farm. It was held that the municipality under its general grant of power had no authority to condemn for such a use the property of the county already appropriated to another public purpose.

There are, of course, variant circumstances which could easily tip the "nodding beam" in another direction. For example, where the property is not in actual public use or is not vital to such purpose, or where the additional easement would not seriously interfere with the first use. *Fayetteville Street Ry. v. R. R., supra; R. R. v. R. R., supra;* Annotation, 12 A. L. R., 1502. And further as bearing upon the flexibility of the rule, a distinction is made in some of the cases between property owned by an instrumentality of the State and devoted to a public use, when the rule is strictly observed, and property owned by a public-service corporation and likewise devoted to a public use, when the rule is somewhat relaxed, the reason being that in the former the public interest alone is supposed to prevail while in the latter the idea of private enterprise also plays a part. *City of St. Louis v. Moore, supra.* What is

here said should be understood as having reference to the facts of the instant case as found by the trial court. *Yarborough v. Park Commission*, 196 N. C., 284, 145 S. E., 563.

The rule as generally applied is stated with clarity by *Folger, J.,* in *The Matter of City of Buffalo,* 68 N. Y., 167 : "In determining whether a power generally given, is meant to have operation upon lands already devoted by legislative authority to a public purpose, it is proper to consider the nature of the prior public work, the public use to which it is applied, the extent to which that use would be impaired or diminished by the taking of such part of the land as may be demanded for the subsequent public use. If both uses may not stand together, with some tolerable interference which may be compensated for by damages paid; if the latter use, when exercised, must supersede the former; it is not to be implied from a general power given, without having in view a then existing and particular need therefor, that the Legislature meant to subject lands devoted to a public use already in exercise, to one which might thereafter arise. A legislative intent that there should be such an effect will not be inferred from a gift of power made in general terms. To defeat the attainment of an important public purpose to which lands have already been subjected, the legislative intent must unequivocally appear. If an implication is to be relied upon, it must appear from the face of the enactment, or from the application of it to the particular subject matter of it, so that by reasonable intendment, some especial object sought to be attained by the exercise of the power granted could not be reached in any other place or manner."

In this view of the matter, the defendants stressfully insisted upon a favorable finding in the court below, but the determination was against them, and they are bound by it on appeal. *Power Co. v. Power Co.,* 171 N. C., 248, 88 S. E., 349.

Second. What has been said in respect of the County Home site applies *a fortiori,* or at least with equal force, to the sections of the county highways which are sought to be flooded or taken.

In the case of *In re Southwestern State Normal School,* 213 Pa., 244, 62 Atl., 908, the State Normal School purchased a number of lots for use as a campus and undertook to condemn the streets and alleys running through them and adjoining them on the north and south. Speaking to the question here under consideration, the Court said : "What the appellant seeks to do is, not to take land belonging to and in the use of a private owner, but is to condemn property already dedicated to public use and used by the public as public highways, and to devote the same to what it claims to be another public use. Property already devoted to public use, including franchises, is subject to eminent domain, and may be taken for other public uses; but, while this is true, it cannot be

so taken without legislative authority expressly conferred or arising by necessary implication."

Likewise, in *City of St. Louis v. Moore et al., supra,* the city of St. Louis sought to condemn for street purposes land used as a playground in connection with a public school. In denying the right to condemn, the Court cites a long list of cases in support of the proposition that property devoted to a public use, more strictly speaking for state purposes, may not be condemned for a second public use without authority expressly granted or which necessarily proceeds as an inference from such a grant.

The suggestion is advanced by the defendants that the city of High Point has by necessary implication legislative authority to condemn the highways in question. As tending to support this position, they point out that sections 2791 and 2792 of the Consolidated Statutes are made available to the city of High Point by express provision in the city charter, and that the present undertaking has been specifically approved by the Validating Act of 1939, ch. 117, Public Laws 1939. We find nothing in these statutes of sufficient definiteness to warrant the suggested inference. The designated sections of the Consolidated Statutes deal only with the general power of condemnation, and the Validating Act of 1939, which took effect on 16 March, 1939 (four days prior to the amendatory and supplemental bond resolution of the defendant city) purports to validate bonds theretofore issued by local units for the purpose of financing or aiding in the financing of PWA projects, including all proceedings for the authorization and issuance of bonds, and for their sale, execution and delivery. It contains nothing in reference to the power of eminent domain.

Upon the findings of the trial court, which have the force and effect of a verdict, we cannot say there is error in the judgment rendered thereon.

Affirmed.