SOUTHERN RAILWAY COMPANY v. CITY OF GREENSBORO AND LAMBETH CONSTRUCTION COMPANY.

(Filed 11 December, 1957)

1. **Eminent Domain § 1—**

    Land in use by a railroad company for railroad purposes cannot, in the absence of statutory authority, express or necessarily implied, be condemned for streets or highways in such manner as to impair or destroy its use for railroad purposes.

2. **Eminent Domain § 14—**

    More is required in the proper exercise of the power of eminent domain than good faith and notice; before property is finally taken the owner must be given opportunity to question the right of the condemnor to take the property.

3. **Injunctions § 8—**

    Where plaintiff alleges an unlawful entry and trespass upon its right of way by a municipality and the municipal contractor pursuant to a plan to construct numerous grade crossings at acute angles, without legislative authority and in such manner as to impede or prevent the railroad company from continuing its railroad operations and services required of it by law, the defendant upon appropriate terms should be restrained from proceeding further with its plans pending the hearing upon the merits of the issues raised by the pleadings.

4. **Eminent Domain § 1: Municipal Corporations § 30—**

   While a municipality in the improvement of its streets may provide grade crossings over railroad tracks within its limits by right angle crossings in such manner as will not deprive the railroad company of the reasonable use of its tracks for railroad purposes, express legislative authority is required for improvement of streets under a plan calling for the construction of numerous crossings in a relatively short distance at acute angles in such manner as would substantially impede or prevent the railroad company from continuing its railroad operations.

PARKER, J., dissenting.

APPEAL by plaintiff from *Olive, J.,* September 23, 1957 Term, GUILFORD Superior Court.

The plaintiff instituted this civil action for trespass and for temporary and permanent restraining orders enjoining the defendants and their agents and servants from committing acts of trespass upon its railway right of way in a designated section in the City of Greensboro.

In substance the plaintiff alleges it owns a permanent easement 130 feet (amended to allege 200 feet) wide over certain lands along Battleground Avenue in the City of Greensboro, including that area beginning at a point 160 feet south of Pembroke Street to a point 180 feet north of Cornwallis Road; and that on this easement it operates its main line railroad between Greensboro and Mount Airy. In addition to its main line it now maintains three business sidings over which it moves freight to and from business establishments adjacent to its easement. In addition to its present facilities, the plaintiff finds it necessary immediately to lay and construct another track along the present one in the designated area and to construct additional sidings so that in the next 12 to 18 months its railroad facilities will be doubled. All its present facilities and those in contemplation will be necessary to enable the plaintiff to carry on its business and meet the requirements placed upon it by the Interstate Commerce Commission of the United States and the Utilities Commission of North Carolina.

The plaintiff sets out its chain of title and attaches to its complaint copies of the documents upon which its claim of title is based. It further alleges that the unhampered use of all its right of way is essential to the operation of its business as a common carrier and that its right of way is now so used. In particular, the plaintiff further alleged:

"7. That on or about the 16th day of September, 1957, the defendant City of Greensboro, acting without the consent or approval of the plaintiff, and without having ac-

quired from the plaintiff any property rights in the plaintiff's right of way hereinbefore described, and without having attempted to acquire any such property rights, awarded a contract to the Lambeth Construction Company for the construction of streets and street crossings at grade in, along, and over the plaintiff's right of way and tracks. That on or about the 25th day of September, 1957, the defendant City of Greensboro and its agent, said Lambeth Construction Company, without notice to the plaintiff and without the plaintiff's permission or consent and without any legal rights so to do, entered upon the plaintiff's right of way located between Pembroke Street and Cornwallis Road, as aforesaid, in the City of Greensboro and commenced grading and other construction work with the intent and purpose to construct streets and grade crossings upon plaintiff's said right of way. That in the performance of such work the said Lambeth Construction Company caused dirt and other material to be placed on and about the plaintiff's railroad track and has caused the said track to be moved or misaligned so as to render the use of the same unfeasible and dangerous, and that the defendant and its agent Lambeth Construction Company are now engaged in the excavation of a ditch approximately 500 feet in length lying along the east side of the plaintiff's railroad track south of Pembroke Street within approximately six feet from the center of the plaintiff's track. That the location and depth of said ditch is such as to render the use of the plaintiff's railroad track at that point so dangerous that it renders it impossible for the plaintiff to operate its trains over said tracks with any reasonable degree of safety. The plaintiff is advised, informed and alleges that the defendant City of Greensboro and its agent Lambeth Construction Company intend to continue the performance of other construction work in and over the plaintiff's right of way which will interfere with the normal operation of the plaintiff's trains and the rendition of the railroad service to the public which is required of it by law.

"8. That the defendant City of Greensboro has adopted a plan for the construction of streets and street crossings along and over the plaintiff's right of way as indicated on the Map attached hereto marked 'Exhibit A.' Said plan contemplates the construction of six grade crossings over the plaintiff's right of way within a distance of 1,670 feet, within which distance there are now two paved crossings and one unpaved crossing; that said planned crossings are designed so that the streets approach the railroad tracks

EXHIBIT "A"

GUILFORD COUNTY, N.C.
VAL. SEC. 27 SHEET S-17c
PARCEL N° 4
VAL. SEC 27 SHEET S-17d
PARCELS 1" & 2"

CODE

REPRESENTS NEW STREETS

REPRESENTS STREETS TO BE ABANDONED

at acute angles, thereby rendering such crossings excessively hazardous. That if the defendant City of Greensboro is permitted to carry into execution its aforesaid plan for the construction of streets and street crossings, it will occupy the plaintiff's main track for a distance of 320 feet in the space of 1,670 feet of railroad trackage and will occupy a substantial part of the plaintiff's right of way for a distance of approximately 2,400 feet, and will render two industrial sidings now in existence and in use practically worthless and useless and the use of a third industrial siding will be rendered unreasonably hazardous. That if the City is permitted to carry into execution its plan as aforesaid it will impose upon the plaintiff railroad greatly increased expense in the maintenance of said street crossings and maintenance of its track in said newly constructed streets, and the further development of railroad service by the plaintiff over its existing track and its right of way will be impaired to the extent that the plaintiff will not be able to render the public service now required of it or reasonably to be required in the foreseeable future.

"9. The plaintiff alleges that its railroad right of way within the City of Greensboro as hereinbefore described has been and is now being devoted to railroad use and that all of the said right of way is necessary and essential to the plaintiff railroad in the operation of its railroad business; and that the City of Greensboro and the defendant Lambeth Construction Company have acquired no legal right and have not attempted to acquire any legal right to enter upon the plaintiff's said right of way or any part thereof

R. R. *v.* GREENSBORO.

for the purpose of constructing the streets and other facilities shown on the plan and map attached to this complaint and marked 'Exhibit A,' and that the entry upon said right of way by the defendant City of Greensboro and the defendant Lambeth Construction Company and their agents and servants constitutes an unlawful trespass upon the property of the plaintiff railroad and an unreasonable interference with the property of the plaintiff necessary and essential in the operation of its railroad.

"10. That unless the defendants and their agents and servants are enjoined and restrained from so doing, they will continue to trespass upon the right of way and property of the plaintiff and to interfere with the plaintiff's railroad operations. The plaintiff alleges that the entry upon its said right of way as aforesaid and the performance of construction work thereon constitute a continuing trespass and that the defendants have continued said trespass after being forbidden by the plaintiff so to do and the plaintiff is without any remedy at law to protect itself from such continued trespass, and unless the defendants and their agents and servants are permanently restrained and enjoined they will wrongfully interrupt, impede and prevent the plaintiff from continuing its railroad operations and the railroad services required of it by law."

Attached to the complaint is a map showing the proposed highway changes undertaken by the City of Greensboro. A reproduction of the map is made a part hereof.

Based on the complaint treated as an affidavit and other supporting evidence, the plaintiff asked for temporary and per-

manent orders restraining the defendants from proceeding further with their street construction plans.

The defendants have not filed answer to the complaint. However, for the purposes of the hearing on the motions for the restraining orders, they filed an affidavit of the Mayor of Greensboro and supporting evidence. In substance the Mayor's affidavit says that by its charter provisions the City of Greensboro, in the interest of safety, is charged with the duty of providing and keeping in repair those streets and highways within the city, including railway grade crossings; that the City Council, after careful study, approved the plan of improvement and in good faith and in the public interest the City entered into a contract with its co-defendant to carry out the planned improvements.

In particular, the affidavit of the Mayor states:

> "6. That in order to get the best results from the public money necessary to improve said highway adequately and provide a highway which will be of the greatest good to the greatest number of people, with the minimum of inconvenience and the least damage, the authorities of the City of Greensboro, and the State of North Carolina, after mature consideration, adopted the plan of this project for the improvement of U. S. Highway No. 220, as shown on the map attached to the complaint in this action."

Further, the affidavit states: "That the City of Greensboro denies that Southern Railway Company has any rights over said lands in conflict with the right to carry out said project. . . . That any right of way of Southern Railway Company over said lands, if it has any, is a right of easement . . . for railroad operations. . . . That the work of the City of Greensboro in completion of said project would in no way interrupt or interfere with the right of way which Southern Railway Company may have, and no irreparable injury can be sustained by Southern Railway Company." The defendant City of Greensboro furnished plans of the crossing changes proposed and the plaintiff refused to co-operate in making them. The Mayor's affidavit further says that the improvements are in co-operation with the State Highway & Public Works Commission. Attached to the Mayor's affidavit and made a part of it is a letter dated September 10, 1957, to the Division Engineer of the State Highway & Public Works Commission signed by the Director of Public Works of the City of Greensboro, stating: "The City of Greensboro has acquired all necessary right of way for the construction of this project and will furnish same without cost to the State Highway Commission."

Based upon the allegations of the complaint and the supporting proof, Judge Preyer issued a temporary order returnable

before Judge Olive on October 2, 1957, restraining the defendants from trespassing or otherwise entering upon the right of way of the plaintiff Railway Company between the specified points near Pembroke Street and Cornwallis Road pending further hearing.

At the further hearing, Judge Olive entered the following order:

> "IT IS CONSIDERED, ORDERED AND ADJUDGED that the temporary restraining order heretofore granted by this Court in this action be, and the same is dissolved as of the 3rd day of October, 1957, and the defendants as of said date are no longer restrained from the construction work restrained by said temporary restraining order."

To the entry of the foregoing order, the plaintiff excepted and appealed to the Supreme Court. Upon motion and upon the conditions fixed in its order, this Court granted supersedeas pending the appeal.

*W. T. Joyner, Jr., Brooks, McLendon, Brim & Holderness, By: Hubert Humphrey for plaintiff, appellant.*

*H. J. Elam, III, Frazier & Frazier, for defendant City of Greensboro, appellee.*

*Jordan, Wright & Henson, for defendant Lambeth Construction Company, appellee.*

HIGGINS, J. This appeal is from the order of Judge Olive dissolving the temporary restraining order issued by Judge Preyer. The order of Judge Olive contains the following: ". . . the Court finds that the work, the performance of which was restrained by said temporary restraining order, is pursuant to a plan and a contract duly adopted in good faith by the City Council of the City of Greensboro in the exercise of its judgment and discretion for the important public work of building and improving streets and storm sewer drains, and that to stop this work would greatly interfere with public improvements that are for the public good and that tend to develop the country and its resources."

It must be understood this Court is discussing only the issues involved. The merits must be left to the trial court. However, we think the pleadings raise questions more basic than whether the improvement was pursuant to plan and a contract entered into in good faith in the exercise of the Council's discretion, and that to stop the work would interfere with public improvements that tend to develop the country and its resources.

The findings may be sufficient (but of this we express no opinion) to enable the City to exercise its power of eminent domain to take private property for the uses indicated. *Yadkin County v. High Point,* 217 N.C. 462, 8 S.E. 2d 470; *Retreat Association v. Development Co.,* 183 N.C. 43, 110 S.E. 524; *Commissioners v. Bonner,* 153 N.C. 66, 68 S.E. 970. In this instance, however, the City attempts to take the property (easement) of another public service agency also possessing the power of eminent domain when the property is already in public use and alleged by the plaintiff to be necessary for that use. In this connection it is noted the City's brief emphasizes the plaintiff's contention by the following: "It is true, as counsel for plaintiff argue, that the whole area involved in this matter is one of the most promising industrial areas in the State."

The map reproduced herein shows the extent to which the City proposes to make use of the plaintiff's right of way as a thoroughfare over which 25,000 cars will pass daily and the number will be doubled within the next 12 years. Whether the labyrinth of crossings as shown by the map will carry the vehicular traffic, present and contemplated, and still permit the plaintiff to operate its railway facilities is a question for the trial court. To the extent of the interference with the railroad's operation over its right of way the City will be taking the plaintiff's property.

Quite understandable is the concern of the City and the public over the traffic bottleneck which has resulted from the suspension of work by court order after road facilities in existence had been partially destroyed by the City's contractor in the attempt to carry out the City's plans. However, it must be borne in mind the City had notice the Railway Company objected to the plan and instead of going to the courts to have the dispute determined, the City elected to execute its plans. It did so at its own risk. The record discloses the City had acquired rights of way for this project from all owners except the plaintiff. The plaintiff certainly has done nothing to waive or forfeit its rights to be heard on the issues of fact and questions of law raised by its complaint. Since the City did not resort to the courts to have the dispute resolved, the plaintiff has done so by this proceeding.

No doubt this progressive and rapidly growing city is anxious to discharge its duty to provide within its domain adequate street and highway facilities. But in this instance, if the plaintiff's contentions are correct, the City seeks to use the strong arm of government under its general powers to take property already

dedicated to a proper public use. "The power of eminent domain, as generally understood, extends only to the right to condemn private property for public uses." *Yadkin County v. High Point, supra; Wissler v. Power Co.*, 158 N.C. 465, 74 S.E. 460; *Jeffress v. Greenville*, 154 N.C. 490, 70 S.E. 919. "The authorities are to the effect that a general authorization to exercise the power of eminent domain will not suffice in a case where property already dedicated to a public use is sought to be condemned for another public use which is totally inconsistent with the first or former use. *Railroad v. Railroad*, 83 N.C. 489; 20 C.J. 602. In such a case a specific legislative grant or one of unmistakable intent is required." *Yadkin County v. High Point, supra,* (citing many cases). The City of Greensboro does not have specific legislative authority.

No doubt the Legislature may authorize a municipality to take (by condemnation) for public use property already devoted to another public use, but the authority must be expressly conferred by statute or must arise by necessary inference. 18 Am. Jur., Eminent Domain, p. 723. Land once appropriated by a railroad company for public use cannot, in the absence of statutory authority which is express or necessarily implied, be condemned for streets or highways if such purpose would be inconsistent with and impair or destroy its use for railroad purposes. 29 C.J.S. 869, Eminent Domain, Sec. 87; *Fayetteville Street Railway v. R. R.*, 142 N.C. 423, 55 S.E. 345. This same principle is fully recognized in the case of *Goldsboro v. R. R.*, 246 N.C. 101, 97 S.E. 2d 486, cited in the City's brief; "Ordinarily, land devoted to the public use cannot be taken for another public use unless express or implied legislative authority has been given which authorizes such taking. (citing authorities) However, the rule is otherwise where the property is not in actual public use and not necessary or vital to the operation of the business of its owner." (Citing *Yadkin County v. High Point, supra*). In the Goldsboro case there was a finding to the effect "that the strip of land herein sought to be condemned is not necessary or essential to the owner, Atlantic Coast Line Railroad Company, in the operation of its railroad business."

Unquestionably the State, its subdivisions, and public agencies may acquire property by gift, by purchase, and, in proper cases, by condemnation under the power of eminent domain. In the latter class of cases the procedure is outlined.

Notwithstanding the fact that authorities who seek to take may act in the utmost good faith, something more is required than merely adopting a plan, transmitting it to the owner, and entering into a contract for the work to be done. Due process in-

R. R. *v.* GREENSBORO.

volves more than notice. Before the plaintiff is finally deprived of its property it may question the right of the City to take as planned. Acquisition of property by confiscation is limited to forfeitures and to contraband.

We have examined the many cases cited by the defendants. These cases do not mitigate or weaken but tend to support the principles enunciated in the cases herein cited, and many others of like import. Courts generally are reluctant to approve governmental shortcuts when personal and property rights are involved.

In view of the importance and seriousness of the issues involved, the facts and the reasons for this opinion have been stated at considerable length. The plaintiff has alleged an unlawful entry and a trespass upon its right of way by the City and its contractor, and that the entry is unauthorized by legislative enactment. It alleges further that if the planned construction is permitted the railroad's ability to operate its lines will be destroyed or greatly impaired. If the plaintiff's charge of trespass is established at the hearing, conceivably the defendant may be faced with the problem of restoring, as near as may be, the property to its former condition. But these matters are for another court.

Nothing herein is intended as a modification of the general rule that a city may provide street facilities over a railroad track by right angle crossings in such manner and under such circumstances as will not deprive the railway company of its reasonable use of its track for railroad purposes. *Ft. Wayne v. Lake Shore and M. S. Railroad*, 132 Ind. 558, 32 N.E. 215.

The issues presented should be heard on the merits, and to that end the *status quo* should be maintained until the issues in dispute have been resolved. The order appealed from is set aside and the cause is remanded to the Superior Court of Guilford County for the entry of an order, upon appropriate terms, restraining the defendants from proceeding further with the execution of its plans pending hearing on the merits.

Reversed.

PARKER, J., dissenting. At the hearing on 3 October 1957 before Judge Olive, pursuant to his order of 27 September 1957, the city of Greensboro presented to the judge an affidavit of George H. Roach, Mayor of the city of Greensboro. This affidavit contains among many other statements, this: "That the spot at which the Southern Railway Company would have the work of this project restrained bears the heaviest and most congested traffic. That the latest traffic count discloses that more than 25,000 vehicles pass through the project area each day,

and the estimated use by 1970 is 50,000 vehicles per day." The Mayor further states in his affidavit: "That to continue the temporary restraining order and stoppage of the construction work under this project could contribute to many accidents to the general public who must operate their vehicles along said highway."

J. A. Rust, General Manager of plaintiff, in the hearing before Judge Olive, testified: "Two trains run daily between Greensboro and Mount Airy over the track involved, one each way, and there are three other switch engine movements, three in each direction, passing this section. This makes eight movements altogether each day over the track in question."

This Court said in *Griffin v. R. R.*, 150 N.C. 312, 64 S.E. 16:

> "It is against the policy of the law to restrain industries and such enterprises as tend to develop the country and its resources. It ought not to be done, except in extreme cases, and this is not such an one. It is contrary to the policy of the law to use the extraordinary powers of the court to arrest the development of industrial enterprises or the progress of works prosecuted apparently for the public good, as well as for private gain. The court will not put the public to needless inconvenience. The court should have dissolved the restraining order."

The opinion cites numbers of our cases.

This Court also said in *Jones v. Lassiter*, 169 N.C. 750, 86 S.E. 710:

> "It is true that when the injunctive relief sought is not merely ancillary to the relief demanded, but is, itself, the principal relief sought, the courts will generally continue the injunction to the hearing upon the making out of a *prima facie* case. *Marshall v. Commissioners*, 89 N.C. 103.
>
> "But the rule does not hold good in cases where important public works and improvements are sought to be stopped. In such matters, in the interest of the public good, the courts will let the facts be found by a jury before interfering by injunction. The right of this plaintiff to recover damages for her alleged injuries is not now before us."

See also, *Scott v. Comrs.*, 170 N.C. 327, 87 S.E. 104; and *Staton v. R. R.*, 147 N.C. 428, 61 S.E. 455.

It is public policy not to interfere with the construction of works of great public benefit, where the defendant is amply able to respond in damages, and no irreparable injury will accrue to plaintiff, if the injunction is refused.

E. L. Faulconer, a former President and General Manager of the Atlantic and Yadkin Railway Company, and now an assistant Vice-President of the plaintiff, and since December 1919 an employee of both railway companies, testified before Judge Olive:

"The criss-cross plan was not, to my knowledge, a part of the Babcock Plan. Well, in a way, what the Southern Railway is objecting to in this is not the putting of the streets there, but the way these are being put there. The engineering is one objection."

The city of Greensboro is a municipal corporation, and able to respond in damages, if any should be awarded. If the plaintiff should prevail at the trial on the merits of the controversy, it has an adequate remedy at law to recover adequate compensation for any loss it may sustain by any acts of the city of Greensboro, and the court can enter such judgment as to justice appertains and the rights of the plaintiff may require in accordance with law.

Judge Olive found in an order 16 October 1957 that "plaintiff will not sustain any damage by the carrying on of the construction work originally restrained by the temporary restraining order."

I vote to affirm Judge Olive's order dissolving the temporary restraining order before issued by Judge Preyer.